# Warren H. Jeudevine and others v. Henry A. Rose and others.

*Sureties: Future mercantile engagements: Time: Withdrawal: Discharge.*
Sureties in a bond given to secure performance by their principal of future mercantile engagements, and in which no period of limitation of liability is fixed, who have notified the obligees that they will no longer be bound for future transactions, are held discharged from liability for transactions thereafter entered upon, where no change in circumstances by the obligees has occurred on the faith of a longer continuance of the suretyship, and they are not prejudiced by such withdrawal.

*Submitted on briefs January 19.  Decided January 23.*

Error to Clinton Circuit.

*Spaulding & Cranson,* for plaintiffs in error.

*Walbridges & Fedewa,* for defendants in error.

GRAVES, J:

Defendants in error, as co-partners under the style of Rose,

French & Losey, were dealers in musical instruments in Clinton and some other counties. They were supplied with pianos, organs, etc., by C. J. Whitney & Co., of Detroit.

In November, 1874, they agreed with Jeudevine to supply him with such instruments, and in connection with that arrangement, he, with the Taylors as his sureties, executed to Rose, French & Losey this bond:

"Know all men by these presents, that we, Warren H. Jeudevine, of Mount Pleasant, Isabella county, Mich., and Joseph K. Taylor, and William Taylor, and Aaron B. Taylor, of St. Johns, Michigan, are held and firmly bound unto Rose, French & Losey, of St. Johns, Michigan, in the sum of two thousand dollars ($2,000) lawful money of the United States of America, to be paid to the said Rose, French & Losey, or to their certain attorneys, heirs, executors, administrators, or assigns, to which payment well and truly to be made, we bind ourselves, heirs, executors, and administrators, and each and every of them firmly by these presents.

"Sealed with our seals and dated the 3d day of November, one thousand eight hundred and seventy-four.

"The condition of this obligation is such that, whereas, it has this day been agreed between the said Jeudevine and said parties of the second part, that parties of the second part shall sell to said Jeudevine the C. J. Whitney & Co. pianos at thirty-five per cent. less than the published catalogue price, with freight added from Detroit, to be sold by said Jeudevine in the counties of Isabella, Gratiot, and Clare, Michigan, and which the said Jeudevine is to pay said parties for, either in cash or in good bank notes, with ten per cent. interest, payable not more than one year from date of note, which note or notes shall be given fifteen days after shipment of said pianos. Also the Packard organ to be sold in said counties by said Jeudevine, and for which he is to pay said second parties at a price thirty-five per cent. less than list prices, with freight added from Fort Wayne, Ind., either in cash or good bank notes with ten per cent.

interest, payable in not more than six months from fifteen days after date of shipment of said organs; also the Estey organ, to a limited extent, to be sold in said counties by said Jeudevine, and for which he is to pay said second parties at a price thirty-five per cent. less than the published list price and freight added, either in cash or good bank notes, with ten per cent. interest, payable in not more than three months from the first day of the month next following date of shipment, provided that the amount due from said Jeudevine to said second parties shall at no time exceed two thousand dollars.

"Now, therefore, if the said Jeudevine shall well and truly keep and perform his said agreement, and said notes given by said Jeudevine shall be paid at maturity, so that said second parties receive payment in full for all said instruments at the time hereinbefore specified, then this obligation to be void, otherwise in force.

"WARREN H. JEUDEVINE.    [Seal.]
WM. TAYLOR.    [Seal.]
A. B. TAYLOR.    [Seal.]
J. K. TAYLOR.    [Seal.]"

December 17, 1874, Rose, French & Losey sold and delivered to Jeudevine under this arrangement an Estey organ and took his note therefor, which was afterwards paid.

Subsequently and prior to January 11th, 1875, and before any further sales were made to Jeudevine under the arrangement, the sureties on the bond called on Rose, French and Losey, and forbade their making further sales to Jeudevine on the credit of the security, and gave notice that they would not be responsible on account of any such further sales.

Notwithstanding this notice the defendants in error, on January 11th, 1875, sold and delivered to Jeudevine on the footing of the original arrangement three other organs, and took his note for the price, being four hundred and two dollars and twenty-five cents. This note was made payable to the order of C. J. Whitney & Co., at the First National

Bank of St. Johns, May 1st, 1875, and carried interest at ten per cent.

On its receipt by Rose, French and Losey, they endorsed and sent it to C. J. Whitney & Co., to be credited on account, and in due season C. J. Whitney & Co. sent it forward with their endorsement, for collection, and it not being paid by Jeudevine or the sureties, Rose, French and Losey took it up.

No other sales were made on the basis of the arrangement.

Rose, French and Losey then sued upon the bond to recover the amount of this last mentioned note.

The cause was tried without a jury, and the judge found the foregoing facts, and decided as matter of law, that the defendants in error were entitled to recover, and judgment was entered pursuant to the finding.

The charge of error is, that the facts do not support the judgment.

The chief question is upon the effect of the notice by the sureties to the defendants in error.

Plaintiffs in error claim that upon the facts as found the notice exempted the sureties from liability on the bond for the subsequent sales for which the note was given.

Defendants in error maintain the contrary.

In considering the point our attention must be confined strictly to the precise state of facts presented.

Very slight differences might require a different opinion.

It is certainly not admissible to say that the primary agreement between Jeudevine and defendants in error was designed to continue without any limit as to duration.

The parties thereto must have contemplated some time or event not very remote for its termination.

But no such time or event is mentioned, and the intention as to the duration of liability of the sureties is left entirely uncertain by the wording of the bond.

Where such is the case in regard to instruments of suretyship given to secure performance of future mercantile

33 MICH.—S.

engagements, the courts lean strongly to a construction which will confine the liability in point of time within reasonable bounds.

The rule when fairly applied is sensible and just. In case the parties have failed to manifest, in what they have said and done, a design that the liability is to continue indefinitely, it is not to be presumed that so extraordinary a risk was meant to be exacted on one side or voluntarily taken on the other.

To admit a contrary inference would be to suppose on general principles that the parties taking security sought what was not reasonable for them to ask for, and that the sureties were regardless on their part of the suggestions of interest and the dictates of ordinary prudence.

Defendants in error stipulated for no specific time, neither did the sureties bind themselves for any.

Of course the past could not be recalled. As to transactions already had, there could be no withdrawal. Accrued liability could not be canceled.

Still, in the absence of obligation for a continuance of liability in point of time, there would seem to be no reason for precluding a withdrawal as against transactions in no way entered upon, and considering the situation of the parties and that a continuing liability in time was not specified, it would seem a reasonable and just construction, that as to transactions not yet initiated, not as yet in existence, the guaranty was meant to be at the will of the guarantors, and to be subject as to such matters to be ended by a manifestation of their will to that effect through actual notice.

There is nothing to show that any change of circumstances by defendants in error occurred on the faith of a longer continuance of the suretyship and whereby they would suffer injury by a withdrawal of the security at the time notice was given. There is no ground for raising any consideration of that kind.

The transactions in question were all had after full notice and in the face of an express declaration that the sureties

withdrew and would not be responsible for further dealings, and there is not a fact to show that any thing whatever had been done towards the transactions before the notice, or that defendants in error had changed their position in contemplation of the further continuance of the guaranty, or, indeed, that the retirement of the sureties prevented the collection of the note. So far as the case shows, the whole business in question was begun and ended after the notice and with full knowledge that the sureties refused to be liable, and, moreover, nothing appears to show that Jeudevine is not himself responsible for the claim. In view of the actual state of facts, we think it should be held that the guaranty ceased to be current after the notice, and inoperative as to transactions thereafter entered upon, and that the sales on which the note was given should be deemed as sales made on the credit of Jeudevine, and not on the security of the bond.

The judgment should be reversed, and one entered here for plaintiffs in error, with costs of both courts.

The other Justices concurred.