NATIONAL EAGLE BANK *vs.* HORATIO A. HUNT, Administrator.

S., by a sealed instrument dated in 1882, guarantied to the E. Bank the payment of business paper made by his sons, discounted and to be discounted by the E. Bank, and waived demand and notice of non-payment.

By another sealed instrument dated in 1884, S. ratified the previous instrument, and agreed that "no extension on any such business paper" should affect "his liability hereunder," *i. e.* under the instrument of 1884, or "under the within agreement," *i. e.* the instrument of 1882.

After the death of S., the E. Bank, without the knowledge of the administrator of S., received and discounted a note of the sons, payable in four months, in renewal of a note discounted while S. was living.

*Held*, that the guaranties of S. were terminated by his death.

*Held*, further, that the estate of S. was not liable for the note which fell due after his death, as the E. Bank discharged the liability by taking a new note for four months in renewal, after the guaranties were terminated.

Guaranties are of two kinds. *First*, where the consideration passes wholly at one time; such are not revocable and are not terminated by death. *Second*, where the consideration passes at different times and is separable; such are revocable and are terminated by death and notice of the death. In the case at bar, successive and distinct discounts made the guaranty of the second kind.

COVENANT. On demurrers to the pleas.

*February* 11, 1888. MATTESON, J. This is an action of covenant upon two sealed instruments, made, executed, and delivered to the plaintiff by Sturgis P. Carpenter, the defendant's intestate.

The first count in the declaration sets forth that on the 25th day of November, 1882, the said Sturgis P. Carpenter, by his certain deed-poll, or agrement in writing of that date, made and signed by him and sealed with his seal, after reciting therein that said plaintiff had theretofore at his request discounted trade or business paper for his son, Clarence H. Carpenter, and might from time to time thereafter discount trade or business paper for said Clarence, or for his son, Frank F. Carpenter, guarantied to said plaintiff the payment as and when it matured of all such trade or business paper of said Clarence or of said Frank that had been or might be discounted by the plaintiff, until such time as he, said Sturgis, should notify the plaintiff of his intention to terminate said guaranty, and thereby waived demand and notice of non-payment thereof; that said Sturgis never notified the plaintiff of his intention to terminate said guaranty, and that afterwards, on the 31st day of March, 1884, the plaintiff, upon the faith of and relying upon said guaranty, discounted for said Clarence his, said Clarence's, note of that date for $2,500, payable four months after date at bank, to the order of said Sturgis, which note had theretofore been indorsed by said Sturgis, and paid over to said Clarence the net proceeds of the discount of said note ; that afterwards, when said note became due and payable, to wit, on the 2d day of August, 1884, payment of it was demanded at bank, but the said Clarence did not pay and never has paid it nor any part of it ; of all which the defendant had due notice, and thereby became liable to pay the plaintiff the amount of said note on demand.

The second count in the declaration is substantially the same as the first, except there is inserted in it, between the averment of the payment of the net proceeds of the discount of said note to said Clarence and the averment respecting the demand and non-

payment of said note, the averment following, to wit: that the said Sturgis P. Carpenter, then in full life, thereafterwards, to wit, on the 2d day of June, 1884, by his certain other deed-poll or agreement in writing by him made and signed, and sealed with his seal, and written upon the back of his former and other agreement aforesaid, after reciting that he had by his former and other agreement, referred to as the within agreement, guarantied to the plaintiff payment of all trade or business paper of his two sons, Clarence H. and Frank F., discounted by said bank, and that his son Clarence had formed a copartnership with Edmund Carpenter, under the firm name of C. H. & E. Carpenter, ratified and continued in force his said former agreement; and in further consideration that said plaintiff had discounted and might thereafter discount trade or business paper of said new firm of C. H. & E. Carpenter, at his request, further guarantied to said plaintiff punctual payment of all said trade or business paper of said firm theretofore or thereafter discounted by the plaintiff, as and when the same became due, and thereby waived demand and notice of nonpayment of the same; and that in consideration of said former agreement, called the within instrument, and of the premises, further agreed that no extension on any such trade or business paper of said Clarence H., said Frank F., or said firm should affect his liability under said agreement dated the 2d day of June, 1884, or under his said former agreement dated the 25th day of November, 1882, and that said guaranty dated the 2d day of June, 1884, should continue in force until he notified said plaintiff of his intention to terminate the same; that the said Sturgis never notified the plaintiff of his intention to terminate the same.

The defendant's third, fourth, and fifth pleas set forth in varying terms, in substance, that prior to the maturity of said note the said Sturgis P. Carpenter died; that the plaintiff had full notice of his death at the time of his decease, and that both of said guaranties were thereby terminated and revoked as to all subsequent transactions; and that after the death of the said Sturgis the plaintiff, with full knowledge of his decease, for a valuable consideration, gave definite time, to wit, four months, to and took a new note from said Clarence H. Carpenter, the maker of said note mentioned in the declaration, and received interest on said

new note so taken, in advance, without the consent or knowledge of the defendant, and without any express reservation, assented to by said Clarence, of the right of the defendant to insist upon the immediate payment of said note by said Clarence, and in default of such payment by said Clarence to pay the same himself, and to sue thereon.

To these pleas the plaintiff has demurred.

Guaranties have been divided into two classes : one where the consideration is entire, that is, where it passes wholly at one time; the other, where it passes at different times, and is, therefore, separable or divisible. The former are not revocable by the guarantor, and are not terminated by his death and notice of that fact. *Calvert* v. *Gordon,* 3 Man. & Ry. 124, 128 ; *Green* v. *Young,* 8 Me. 14, 15, 16 ; *Moore* v. *Wallis,* 18 Ala. 458, 463 ; *Royal Insurance Co.* v. *Davies,* 40 Iowa, 469, 471 ; *Lloyds* v. *Harper,* L. R. 16 Ch. Div. 290, 305–307, 313, 314, 317–321 ; *Rapp* v. *Phœnix Insurance Co.* 113 Ill. 390, 394, 395. The latter, on the contrary, may be revoked as to subsequent transactions by the guarantor, upon notice to that effect, and are determined by his death and notice of that event. *Offord* v. *Davies,* 12 C. B. N. S. 748, 756, 757 ; *Jordan* v. *Dobbins,* 122 Mass. 168, 170, 171 ; *Coulthart* v. *Clementson,* L. R. 5 Q. B. Div. 42, 46, 47 ; *Rapp* v. *Phœnix Insurance Co.* 113 Ill. 390, 395, 396 ; *Menard* v. *Scudder,* 7 La. Ann. 385, 391, 392.

The distinction between these two classes of guaranties is well illustrated by Lush, Lord Justice, in *Lloyds* v. *Harper,* L. R. 16 Ch. Div. 290, 319. " An instance of the first," he remarks, " is where a person enters into a guaranty that, in consideration of the lessor granting a lease to a third person, he will be answerable for the performance of the covenants. The moment the lease is granted there is nothing more for the lessor to do, and such a guaranty as that of necessity runs on throughout the duration of the lease. The lease was intended to be a guarantied lease, and it is impossible to say that the guarantor could put an end to the guaranty at his pleasure, or that it could be put an end to by his death, contrary to the manifest intention of the parties. Another illustration of it is found in . . . *Calvert* v. *Gordon,* 3 Man. & Ry. 124, which is one of a precisely similar kind. There

the defendant, in consideration that the plaintiff would take into his service a given individual as collector and clerk in a responsible position, guarantied that he would be answerable for his fidelity as long as he continued in that service. It was held, and as I think rightly, by the Court of Queen's Bench, that that guaranty could not be put an end to as long as the service continued. The consideration there was, admitting the young man into the service of the plaintiff in that capacity, and, that being done, it was to be a guarantied service as long as he remained there. The guaranty, therefore, necessarily continued until the service ended.

"Instances of the second class are more familiar. They are where a guaranty is given to secure the balance of a running account at a banker's, or the balance of a money account for goods supplied. There the consideration is supplied from time to time, and it is reasonable to hold, unless the guaranty stipulates to the contrary, that the guarantor may at any time terminate the guaranty. He remains answerable for all the advances made or all the goods supplied upon his guaranty before the notice to determine it is given; but at any time he may say, ' I put a stop to this; I do not intend to be answerable any longer; therefore do not make any more advances or supply any more goods upon my guaranty.' As at present advised, I think it quite competent for a person to do that when, as I have said, the guaranty is for advances to be made or goods to be supplied, and where nothing is said in the guaranty about how long it is to endure. In that case, as at present advised, I cannot entertain a doubt that the judgment of Mr. Justice Bowen, in *Coulthart* v. *Clementson*, L. R. 5 Q. B. Div. 42, is perfectly right, that notice of the death of the guarantor is a notice to terminate the guaranty, and has the same effect as a notice given in the lifetime of the guarantor that he would put an end to it."

The only case in which a different doctrine from that above expressed with reference to the second class of guaranties has been held is *Bradbury* v. *Morgan*, 1 H. & C. 249. In that case, however, as remarked by Lord Romilly in *Harris* v. *Fawcett*, L. R. 15 Eq. 311, 313, the plea did not aver that the plaintiffs had notice of the death of the guarantor before they supplied the

goods, although the court did not base its decision upon the want of such notice.     The authority of *Bradbury* v. *Morgan* has, however, been questioned; *Harris* v. *Fawcett*, L. R. 15 Eq. 311, 313; and was not regarded in *Coulthart* v. *Clementson*, L. R. 5 Q. B. Div. 42, a later case, in which a contrary decision was made.

The guaranties in the case at bar come within the second class above considered.     They were, therefore, upon the authorities cited, terminated by the death of the guarantor and notice of it to the plaintiff, as to all subsequent transactions.     As, however, the note described in the declaration had been discounted, and the net proceeds had been paid to the maker prior to the death of the guarantor, the plaintiff would have been entitled to recover but for the fact, set up in the pleas, that after notice of the death of the guarantor it extended the time of payment for a further period by taking a new note from the principal debtor and receiving the interest thereon in advance, without the consent of the defendant, and without any reservation of his right assented to by the principal, to insist upon immediate payment by the principal, and, in default of such payment, to pay the debt himself, and proceed at once against the principal.     That such action on the part of the plaintiff was sufficient to release the estate of the guarantor, and the defendant as his representative, from liability, is too well established to need the citation of authority.

The plaintiff, however, contends that it is entitled to maintain its action by reason of the agreement of the deceased contained in the instrument of June 2, 1884, that no extension on the trade or business paper mentioned should affect his liability.     It insists that this agreement, though contained in the same paper as the second guaranty, was entirely distinct from the guaranty itself, and binds the defendant under the general rule that the personal representative of an intestate or testator is bound by all the contracts of the deceased, except those of a personal nature, or those requiring the exercise of personal skill or taste.     If the agreement was, as the plaintiff seems to suppose, an agreement that no extension upon such trade or business paper should affect his liability generally, or, in other words, had been that he should continue liable at all events whenever the extension was given, there would be force in the plaintiff's claim.     But the agreement is not of that

character. It restricts the liability of the deceased to a liability under the two guaranties. The language is, "agreeing that no extension on any such trade or business paper . . . shall affect my liability *hereunder,*" *i. e.* under the instrument of June 2, 1884, "*or under the within agreement,*" *i. e.* the instrument of November 25, 1882. Of necessity, therefore, the extension contemplated in the agreement, which was not to affect his liability under those instruments, must have been an extension while those instruments were in force, not one granted after they had been terminated. Those instruments, as we have seen, were both terminated by the death of the guarantor and notice of that fact to the plaintiff, the death and notice being equivalent to a notice given by the guarantor in his lifetime for that purpose. The extension upon which the defendant relies as releasing the estate from liability is alleged in the pleas to have been granted after the instruments had been so terminated. We think the demurrers should be overruled and the pleas sustained.

*Demurrers overruled.*

*James Tillinghast,* for plaintiff.
*Joseph C. Ely,* for defendant.