# Shackamaxon Bank *v.* Yard, Exrx., Appellant.

[Marked to be reported.]

150 351
f197 190

150 351
27 SC 265

*Surety for cashier—Effect of increase in duties.*

To discharge a surety of an officer or employee by a change in the duties of the latter, without notice to the surety, the change must be such as to interfere with or modify the duties, for the faithful performance of which the surety is bound, so as to make it inequitable to enforce the contract of suretyship upon a state of facts not within the contemplation of the parties when it was made.

In this case, a bank cashier, after giving bond as cashier, was employed as individual ledger clerk, without notice to his surety. The fact that the keeping of the individual ledger by a separate person from the cashier might be a check to prevent the latter from wrong-doing, or that it might temporarily conceal the crime, is not sufficient to relieve the surety—the custody of the money not being changed or the responsibilities as an officer or his opportunities for embezzlement not being increased.

*Irrevocable suretyship—Death of surety.*

A contract of suretyship, binding upon heirs, executors and administrators, during the time of the present or future employment of the principal will not be revoked by the death of the surety. The estate will be bound to the end of the term of service.

Argued March 28, 1892. Appeal, No. 149, Jan. T., 1892, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1885, No. 703, on verdict for plaintiff, in assumpsit on covenant in bond to secure the faithful performance of the duties of cashier of state bank. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

The action was brought by the Shackamaxon Bank, for the use of its assignees, against Yard, executrix of Murphy, deceased, who was a surety on the bond of a cashier in said bank.

The evidence, on the trial before HARE, P. J., was to the following effect: On May 1, 1873, Thomas L. Huggard and C. S. Murphy gave to the Shackamaxon bank a bond in the sum of $5,000, conditioned for the faithful performance of Huggard's duties as cashier. Under the Act of March 29, 1851, P. L. 295, the cashier is to be elected annually. Huggard was never re-elected. On June 8, 1876, Murphy died. At that time he was a depositor in and stockholder of the bank. About

ten days after his death, defendant, as his executrix, lodged with the bank a short certificate of her appointment; and the account and stock were both transferred to her as executrix.

From the organization of the bank to Oct. 18, 1878, Huggard had acted simply as cashier. A Mr. Wolf had been individual book-keeper. The duty of the individual book-keeper is to keep the discount books and all the individual accounts of the depositors, and to report overdrafts, etc., to the board. On June 18, 1878, the minute-book of the board shows that the cashier offered to dispense with the individual book-keeper and to assume the duties of that office as well as his own, if he were paid $500 additional. His offer was accepted, and thereafter Huggard also did the work formerly done by the individual book-keeper.

In May, 1885, the bank failed and made an assignment to the use plaintiffs. It was then discovered for the first time that Huggard had permitted overdrafts, and had falsified the accounts of the bank in order to cover up a defalcation of the president. The first falsification was made June 26, 1883; and they continued until the bank failed. This suit was brought Jan. 30, 1886.

The bond upon which suit was brought bound the obligors and each of them, their and each of their heirs, executors and administrators. The condition of the obligation was " that if the said Thomas L. Huggard shall, for and during the time of his employment as cashier by the bank, whether under his present election, or under any subsequent election, to the said position, or whether under its present organization or charter, or under any renewals or extension thereof, discharge and fulfil with integrity and fidelity the trust thereby reposed in him, and faithfully and honestly execute the duties that may be assigned to him, then the above obligation to be void, or else to be and remain in full force and virtue."

The court refused defendant's offer to prove by Adam A. Stull that he was secretary and treasurer of the Commonwealth Title & Trust Co. and had filled that position for many years, and that he had also filled that position in a number of other banking institutions, and that he was acquainted with the method of book-keeping and business carried on in and by such institutions, to be followed by the following question:

" Q. Please state as a bank expert whether or not the fact that the individual ledger was kept by a separate and distinct person from the cashier would be a check upon the cashier in the performance of his duties tending to prevent any wrong-doing by him ? " [4]

Plaintiff's points, refused by the court, were as follows, *inter alia :*

" 1. Under all the evidence in the case the verdict should be for the defendant. [7]

" 2. It being proven by the plaintiff's books, and not contradicted, that, after the bond in this case was given, and after the surety had died, the duties of the cashier had been increased, and that he received an increased salary therefor, the verdict should be for the defendant. [1]

" 6. If the jury believe that new duties were imposed upon the cashier after the bond sued on was given, and without the consent of the surety, their verdict should be for the defendant. [2]

" 7. If the jury believe that after the bank had knowledge of the surety's death, the then current year of the cashier's term expired before any default occurred, the verdict should be for the defendant. [5]

" 8. Any permanent material alteration in the cashier's duty without the consent of the surety, discharges him from liability. [3]

" 10. If the jury believe that there was no breach of the condition of the bond until after the death of the surety and that the bank's officers had actual notice of the death of the surety at or near the time when his death occurred, and before the breach of said bond, then the plaintiff cannot recover, and your verdict should be for the defendant." [6]

Verdict for plaintiff for $5,000. Judgment was afterward entered for defendant on a reserved point, which on appeal was reversed (143 Pa. 129) and judgment entered for plaintiff on the reserved point. Defendant then took this appeal.

*Errors assigned* were (1–3, 5–7) refusal of points, quoting them ; and (4) ruling on evidence, quoting offer as above.

*Alex. Simpson, Jr., A. W. Horton,* with him, for appellant.— This case was tried at the same term and in the same court as

Am. Dist. Teleg. Co. v. Lennig, 139 Pa. 594, and the same error
appears in each case.   It was there held that it was for the jury
to say whether or not the acceptance of the new office inter-
fered with or affected the old so as to increase the surety's
risk.   In this case the court took that question away from the
jury and rejected evidence on that point.   The fact that the
person who received the money entered it upon the books, gave
him largely increased facilities for wrong-doing.   The offices
were too intimately connected to be permanently joined with-
out the surety's consent.   By refusing the 2d, 6th and 8th
points, the court said that a permanent material alteration in
the cashier's duty, without the consent of the surety, did not
discharge the surety although it greatly increased the risk.

A surety is not bound beyond the extent of the engagement,
which appears, from the terms of the contract and the nature
of the transaction, to have been in his contemplation at the
time of entering into it, and his liability cannot, without his
consent, be extended or enlarged either by the obligee or by
operation of law.   Even if he sustains no injury by the change,
or if it be for his benefit, he has a right to stand on the very
terms of his obligation, and is bound no further : Bensinger v.
Wren, 100 Pa. 505.   If the surety's engagement relates to a
particular office, it extends only to such things as were in-
cluded in the office when the engagement was entered into.
Wylie v. Gallagher, 46 Pa. 209.

The evidence covered by the 4th assignment of error was
admissible under the cases cited above.

If the surety could at his option terminate the liability, it is
terminated by his death and notice of that fact.   Harriss v. Faw-
cett, 8 Ch. Ap. 866 ; Slagle v. Amberson, 1 Mona. 30.   The same
result is reached when the contract is severable, though it is
not by its terms determinable at the option of the surety : Coul-
thart v. Clementson, L. R. 5 Q. B. Div. 42 ; Slagle v. Amber-
son, 1 Mona. 30.   A limitation to that effect in such cases is
read into the contract.   If the time, during which the relation
between the principal debtor and creditor is to subsist, is di-
vided into terms the surety may by notice relieve himself from
liability for all future terms : Pleasonton's Ap., 75 Pa. 344.

The cashier must be elected annually : Acts March 29, 1851,
P. L. 295 · Nov. 20, 1871, P. L. 1872, p. 1381.   The bond, like

the lease in the Pleasonton case, covers the present or any future election. It being conceded by appellee that the death of the surety and notice of that fact is equivalent to a notice to terminate the liability, there is no distinction between the present case and Pleasonton's Appeal. With that law point admitted, the cases may be paralleled on the following points : The suretyship was from year to year. The contract was determinable by either party at the expiration of the current year. The creditor had notice that the surety would not be liable after the current year. The surety's estate was sued for a default occurring after this date.

*R. C. McMurtrie,* for appellee.—Am. Dist. Teleg. Co. v. Lennig, 139 Pa. 594, premises the admitted rule that a surety is not liable for risks he did not assume, and then goes to the point of the case, which was, in what capacity was the fraud committed, as book-keeper or as cashier ; and said this was a fact for the jury. In so deciding, of necessity the court decided that the employment as cash-keeper did not avoid the suretyship for the book-keeper ; for, if it did, the question, in which capacity the fraud was committed, became immaterial ; and the decision was that it was not only material, but the single and only material fact.

The point as to termination of suretyship by death was decided in the former writ of error. The same point was made, the same authorities cited, the same argument made. It was in the case and the ground taken in the decision is wholly foreign to the subject, except on the assumption that the surety cannot withdraw. Coulthart v. Clementson, L. R. 5 Q. B. Div., at the foot of page 46, admits that the right to withdraw or to terminate by death only exists by implication from a general understanding, and agrees that this may be excluded by contract indicating an intention that the liability should continue. There are such words here. The contract extends to the executors of the surety by express words.

OPINION BY MR. JUSTICE WILLIAMS, July 13, 1892.

This case was here in 1891, and is reported in 143 Pa. 129. The question then presented was whether a formal re-election of the cashier each year was necessary in order to the liability of the surety on his official bond. The learned judge of the

court below was of that opinion and accordingly entered judgment in favor of the defendant.   The plaintiff appealed assigning the ruling upon this question, as error.   We sustained the assignment and directed judgment in favor of the plaintiff on the reserved point.   The defendant is now the appellant.   He contends that he is discharged from all liability on his bond because the bank had increased the duties of the cashier, without his consent, and before the embezzlement complained of was committed.   The general proposition on which he relies is found stated in the defendant's eighth point as follows :  " 8th. Any permanent material alteration in the cashier's duty without the consent of the surety discharges him from liability." The court declined to instruct the jury as requested and this action is the subject of the third assignment of error.

A case might be presented in which the duties of an officer or employee might be so changed as to make it inequitable to hold his sureties for an act occurring after the change had taken place; but that would depend on the character of the change and not on the mere fact that a change had been made.

In this case it appears that Huggard was elected cashier and gave the bond now sued on as security for the faithful performance of the duties of his office.   Subsequently he proposed to keep the individual ledger, in addition to doing his work as cashier, for an additional sum of five hundred dollars per annum.   To this the directors agreed ; and the extra work done by him as a book-keeper under this agreement is the basis of the allegation that a material alteration has been made in his duties as cashier that should relieve his sureties from liability.

The proofs show that as cashier Huggard embezzled and aided others to embezzle a large amount of the bank's money. It is not denied that he is liable to the bank for his breach of duty.   The sureties admit that their principal has broken the condition of the bond and that their liability would be fixed if the circumstances on which they rely to show their discharge from such liability did not exist.

The contention is that the fact that Huggard performed other services for the bank than those involved in, or belonging to, the office of cashier is, *per se*, a discharge of the sureties from their undertaking for his faithful performance of his official duties.

This position is thought to find support in the recent case of the Am. Dist. Tel. Co. v. Lennig, 139 Pa. 594. In that case one had been employed as a book-keeper and had given a bond with sureties to secure his employers against loss by his want of fidelity in the performance of his work. Afterwards he was made cashier *pro tempore,* and a few days later he was appointed to that office. While acting under the *pro tempore* appointment he embezzled money belonging to his employers. To conceal the crime so committed he made false entries in the books. An action was brought upon the bond given on his appointment as book-keeper, to recover for his embezzlement as cashier *pro tem.* The sureties defended on the ground that the money sought to be recovered from them was lost by reason of the embezzlement of the cashier, and not by reason of any act of the book-keeper as such. This court held that if the fact was as the sureties alleged, they were right in their legal position ; but as the embezzlement occurred before their principal was duly appointed cashier, the capacity in which he was acting at the time was a question for the jury on which the sureties had a right to be heard. In the opinion delivered by our late brother. Clark it is said: " Neither the imposition of additional, distinct and consistent duties, nor the appointment of the principal to an additional office would necessarily relieve the surety on his bond, if the new duties or the new office have no such connection with the old as to interfere with or affect the original employment." The book-keeper as such had no access to the funds of his employer. When he was put in charge of them as cashier he had new duties and responsibilities put upon him which were not in contemplation of his sureties when they entered into their undertaking on his behalf. If his default was in the discharge of his new duties and these were not such as in the temporary absence or removal of a cashier were incidental to his employment, until a new cashier could be secured, then his sureties were not liable. If on the other hand his duties under his *pro tempore* appointment were such as are incidental to an employment as book-keeper, then their liability on their bond was not relieved against and the plaintiff was entitled to recover.

This does not support the position contended for in this case. Huggard's appointment was to the office of cashier. The de-

fendants gave their bond to secure his fidelity in the performance of the duties of that office.   It was as cashier that he embezzled and misappropriated funds that it was his duty to deal honestly with, so that the breach of the condition of the bond was conceded.   The extra work done by him on the books, by virtue of his employment to keep the individual ledger, was the sole reliance of the defendant.   But what change did this extra work make in his duties as cashier ?   It did not affect his custody of the money of the bank.   It did not increase his responsibilities as an officer or his opportunities for embezzlement.   The most that is suggested is that it might afford some help in the temporary concealment of his crime.   Under the rule laid down in the American District Telegraph Company v. Lennig, *supra*, this is not enough.   The duties of the new office must be such as to interfere with or modify the old.   If they are not, the sureties cannot complain.   It is not enough that some change in the work of the appointee, the principal, has been made.   It must also appear that the change was such as to interfere with or modify the duties for the faithful performance of which the sureties are bound, so as to make it inequitable to enforce their undertaking upon a state of facts not within the contemplation of the parties when it was made.   The first, second and third assignments of error are not sustained.

The remaining assignments relate to the effect of the death of the surety upon his liability under the facts of this case. The subject was discussed on the trial in the court below, and the point was ruled against the defendant.   As the defendant did not then appeal the question came only incidentally before us at that time ; but the holding that notwithstanding the want of a formal re-election of the cashier the liability of the sureties continued to the end of his term of service, might be properly regarded as covering the question now raised.

The surety had undertaken for himself, " his heirs, executors and administrators," to be responsible for Haggard's honesty in the office of cashier during the entire time of his employment as such whatever that time might be.   Under Pleasonton's Appeal, 75 Pa. 344, the obligation contained no stipulation authorizing the termination of the relation between the principal and the bank by notice.   If the bank had refused to retain Huggard, and put some one else in his place, the surety would

thereafter have ceased to be liable because his principal had ceased to be cashier ; but so long as he remained in the employment of the bank in that office, under whatever election or form of organization, the liability of the surety was by express words to remain. The parties contemplated a permanent relation. The bond provided for it in apt words, and we see no reason why the liability should not be enforced.

The assignments relating to this question are not sustained and the judgment is affirmed.