CASE 80—ACTION ON GUARANTY—MAY 20.

# Aitken, Son & Co. v. Lang's Administrator, Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

GUARANTY—CONTINUING, TERMINATED BY DEATH OF GUARANTOR.—A continuing guaranty so far as it remains executory is terminated by the death of the guarantor, although the guarantee may be ignorant of such death.

GARVIN BELL FOR THE APPELLANT.

1. The guaranty sued on is a continuing guaranty.
2. The guaranty was not terminated by the death of the guarantor, S. C. Lang.
   Citations: Brandt on Suretyship & Guaranty, pars., 92, 156 to 160; Lowe v. Beckwith, 14 B. M., 150; Glover v. Thompson, 78 Ky., 193; Steadman v. Guthrie, 4 Met., 156; Union Bank v. Costar's Exrs., 3 Com. Rep. (3 N. Y.), 204; White v. Baxter, 71 N. Y. R., 254; Bishop v. Eaton, 161 Mass., 437; Johnson v. Bailey, 79 Tex., 516; Wright v. Griffiths, 121 Ind., 478; Stern v. James, 4 N. Y. Sup., 816; Lehigh C. & I. Co. v. Scallan 63 N. W. R. (Minn.), 245; Davis v. Wells, 104 U. S., 159; Bradbury v. Morgan, 1 H. & C., 249; Hariss v. Pawcett, L. R., Ch. Ap., 866; Coulthart v. Clementson, 5 Q. B. Div., 46-7; Beckett v. Addyman, 9 Q. B. Div., 792; Westhead v. Sproson, 6 H. & N., 728; Offord v. Daviss, 12 C. B., 748; In re Sylvester, L. R. 1 Ch. for 1895, p. 573; Hyland v. Habich, 150 Mass., 112; Jordan v. Dobbins, 122 Mass., 168; Menard v. Scutter, 7 La. Ann., 385; s. c. 56 Am. Dec., 610; Knotts v. Butler, 10 Rich. Eq. (S. C.), 143; Gay v. Ward, 67 Conn., 167; Green v. Young, 8 Maine, 14; Jones v. Brown, 69 Cal., 37; Hightower v. Moore, 46 Ala., 387; Insur-

Aitken, Son & Co. v. Lang's Admr., &c.

ance Co. v. Davis 46 Ia., 469; Carter v. Hampton, 77 Va., 631;
Kernochan v. Murray, 11 N. Y., 306; National Eagle Bank v.
Hunt, 16 R. I., 153; Rapp v. Phoenix Ins. Co., 113 Ill., 396;
Mechem on Agency, 245; Brandt on Suretyship, par. 1; Kil-
bridge v. Moss., 113 Cal., 432; Bell v. Bruen, 1 How., U. S.
Ct., 182; Short v. Trabue, 4 Met., 302; Williams on Execu-
tors (5th ed.), par. 1559; Chitty on Contracts, par. 8, p. 101.

KOHN, BAIRD & SPINDLE FOR THE APPELLEE.

The guaranty sued on was of a severable character, subject
to withdrawal on the part of the grantor at any time and ter-
minated by the guarantor's death. It was, therefore, revoked
by the death of the grantor without notice to the guarantee.

Citations:  Jordan v. Dobbins, 122 Mass., 168; Hyland v. Habich.
150 Mass., 112; s. c. 22 N. E. R., 765; Harriss v. Fawcett, L. R.,
15 Eq., 311; Bank v. Leavensworth, 26 Vt., 209; Bank v. Water-
man, 30 Ill., 548; Slegel v. Forney, 15 Atl., 427; Parsons on
Contracts (8th ed.), vol. 2, note to pp. 31-2; Pollock's Principles
of Contracts, 21; Brandt on Suretyship & Guaranty (2d ed.),
sec. 134.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

To guaranty the appellants, Aitken, Son & Co., for goods
which they might sell Miss Emma Lang, S. C. Lang exe-
cuted and delivered to them a writing which reads as fol-
lows: "New York, March 15, 1895.  Messrs. Aitken, Son
& Co..—Dear Sirs:  In consideration of the sale by you to
Miss Emma Lang, doing business under the firm name of
Mme. F. Lang, at Louisville, Ky., of certain goods now or
hereafter to be bought by her, and for one dollar to me
paid, the receipt whereof is hereby acknowledged, I here-
by guaranty the payment by her to you of the price of
such goods; and, if she does not pay the same when due,
I agree to promptly pay said price on demand.  [Signed]
S. C. Lang."

On August 17, 1895, S. C. Lang died.  For all the goods
which the appellants sold Miss Lang previous to that date,
she paid.  The goods for which the appellants seek to hold
the Lang estate liable were sold in September and Novem-

ber following his death. Assuming the averments of the appellants in the pleadings to be true, at the time the sales were made, in September and November, they were not aware of the death of S. C. Lang.

We understand counsel to agree that the writing which is the basis of this suit was continuing in its nature, unlimited as to time, and was to cover future sales made to Miss Lang. The question is, what effect upon the guaranty had the death of the guarantor, with reference to sales of goods after his death; the guarantees acting without notice? It is insisted by counsel for appellants that it is an executed contract, and therefore the death of the guarantor did not revoke it, whilst counsel for appellees contend it is an open, continuing offer—a unilateral, executory, severable contract—subject to withdrawal before acted upon, and that, therefore, the death of the party was a revocation of it. There is a conflict of authorities upon the question involved. Those which hold such a guaranty is not revoked by death reach the conclusion that the relations created by the guaranty between guarantor and guarantee is that of parties to an executed contract, whilst those who hold to the opposing view conclude the relationship to be that of a continuing offer for a contract. The guaranty declared upon is not limited as to time, nor does it limit the quantity of goods to be sold. It is continuing in its nature. The guarantees were not obligated by its terms to sell goods to Miss Lang upon the credit of the guarantor. It was a unilateral contract, which could be terminated at the pleasure of the guarantor. It is of a severable character, because, if the guarantees sold goods upon the faith of it, the guarantor was bound to pay for such goods as had been sold upon his credit, but the guarantees could no longer sell goods upon his credit if their

authority to do so had been revoked. A guaranty of the kind under consideration, in effect, is an offer by the guarantor to pay the guarantees for such goods as they might sell the purchaser named. It is somewhat in the nature of an offer by the guarantor to the guarantees for a contract, for no contract is consummated—no consideration passing—until the goods are sold. Therefore it can not be said it is an executed contract, with reference to the future. It is wanting in one of the essential elements of a contract—mutuality. No obligation is imposed on the guarantees.

The guaranty could only continue during the will of the guarantor, as he could revoke it. Its continuing quality being terminable at the will of the guarantor, is it not unreasonable to suppose that it was intended by the parties that when the power to terminate ceased, by death, it was to continue until notice of death was in some way given the guarantees? This notice might not be received for a long time, as the real and personal representatives of the deceased might be ignorant of the guaranty, and in the meantime the estate might be bankrupted. In our opinion, as the guaranty was terminable at the will of the guarantor, when that will no longer existed, by reason of death, it was thereby revoked. It would not be profitable to review the authorities upon the question here involved, as the case of Jordan v. Dobbins, 122 Mass., 168 [23 Am. R., 305], is a well-considered case, and sustains the conclusion we have reached. We quote from it as follows:

"An agreement to guaranty the payment by another of goods to be sold in the future, not founded upon any present consideration passing to the guarantor, is a contract of a peculiar character. Until it is acted upon, it imposes no obligation and creates no liability of the

guarantor. After it is acted upon, the sale of the goods upon the credit of the guaranty·is the only consideration for the conditional promise of the guarantor to pay for them.

The agreement which the guarantor makes with the person receiving the guaranty is not that I now become liable to you for anything, but that, if you sell goods to a third person, I will then become liable to pay for them if such third person does not. It is of the nature of an authority to sell goods upon the credit of the guarantor, rather than of a contract which can not be rescinded except by mutual consent. Thus, such a guaranty is re- vocable by the guarantor at any time before it is acted upon.

"In Offord v. Davies, 12 C. B. (N. S.), 748, the guaranty was of the due payment for the space of twelve months of bills to be discounted; and the court held that the guarantor might revoke it at any time within the twelve months, and that the plaintiff could not recover for bills discounted after such revocation. The ground of the decision was that the defendant's promise by itself cre- ated no obligation, but was in the nature of a proposal, which might be revoked at any time before it was acted on.

"Such being the nature of a guaranty, we are of the opin- ion that the death of the guarantor operates as a revoca- tion of it, and that the person holding it can not recover against his executor or administrator for goods sold after the death. Death terminates the power of the deceased to act, and revokes any authority or license he may have given, if it has not been executed or acted upon. His es- tate is held upon any contract upon which a liability exists at the time of his death, although it may depend upon fu- ture contingencies. But it is not held for a liability which

is created after his death, by the exercise of a power or authority which he might at any time revoke.

"Applying these principles to the case at bar, it follows that the defendant is entitled to judgment. The guaranty is carefully drawn, but it is, in its nature, nothing more than a simple guaranty for a proposed sale of goods. The provision that it shall continue until written notice is given by the guarantor that it shall not apply to future purchases affects the mode in which the guarantor might exercise his right to revoke it, but it can not prevent its revocation by his death. The fact that the instrument is under seal can not change its nature or construction. No liability existed under it against the guarantor at the time of his death, but the goods for which the plaintiffs seek to recover were all sold afterwards.

"We are not impressed with the plaintiff's argument that it is inequitable to throw the loss upon them. It is no hardship to require traders, whose business it is to deal in goods, to exercise diligence so far as to ascertain whether a person upon whose credit they are selling is living.

"The decision in Bradbury v. Morgan, 1 Hurl. & C., 249, upon which the plaintiffs rely, was rested upon reasoning which appears to us to be unsatisfactory, and inconsistent with the opinion of the same court, a year before in Westhead v. Sproson, 6 Hurl. & N., 728, and with the decision in Offord v. Davies, *ubi supra*, at the argument of which Bradbury v. Morgan was cited; and it has not since been treated as settling the law of England. Harriss v. Fawcett, L. R., 15 Eq., 311, and L. R., 8 Ch. 866. The reasons of the similar decision in Bank of South Carolina v. Knotts, 10 Rich., 543, are open to the same objections."

2 Parsons on Contracts (8th Ed.), p. 31, in a note says:

[42]

"A continuing guaranty contemplates a series of transactions. As each takes place, a separate obligation arises as to that, and to that extent what was a revocable offer becomes an irrevocable contract. As to the future, however, death or notice may revoke it."

It is said in Pollock's Principles of Contracts, p. 21: "There is believed to be one positive exception in our law to the rule that the revocation of a proposal takes effect only when it is communicated to the other party. This exception is in the case of the proposer dying before the proposal is accepted. This event is in itself a revocation, as it makes the proposed agreement impossible, by removing one of the persons whose consent would make it."

It is said in 1 Brandt on Suretyship and Guaranty (2d Ed.), section 134: "It has been held that the death of a person who has given a letter of credit authorizing another to draw on him to a certain amount for a limited period, and agreeing to accept the drafts drawn, and pay them if not paid by the drawer at maturity, will operate as a revocation of all authority to thereafter draw on his credit so as to bind his estate, though the person to whom, and for whose security the letter was given has no notice of his death, and the period for which the authority was given has not expired."

We believe it is but the recognition of a just and sound principle to hold that the death of the guarantor revokes a guaranty like the one under consideration. The duty should be imposed upon one who attempts to sell goods upon the credit of another to ascertain that such one is living at the time of the sale. Slight diligence will always enable him to acquire such information, and it certainly works no hardship upon him to be required to do so. The judgment is affirmed.