CHAIN v. WILHELM.

No. 4007.

Circuit Court of Appeals, Fourth Circuit.
June 8, 1936.

P. J. Crogan, of Kingwood, W. Va., for appellant.

F. E. Parrack, of Kingwood, W. Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The crucial question to be determined in this case is whether the obligation of an individual surety upon a depository bond given by a bank to secure the repayment of funds deposited by trustees in bankruptcy expires with the death of the surety. On July 30, 1924, the Kingwood National Bank of Kingwood, W. Va., as principal, and George A. Herring and James W. Flynn, both of the same place, as sureties, executed a bond under seal in the sum of $5,000, to the United States, for the payment of which they bound themselves, their heirs, executors, successors, and assignees, jointly and severally. It was recited that the bank on July 22, 1924, had been designated as a depository of funds of estates in bankruptcy by the District Judge of the District Court of the United States for the Northern District of West Virginia; and the condition of the obligation was that if the bank should faithfully discharge and perform all the duties pertaining to it as such depository, then the obligation should be void; otherwise of full force and effect. The bond was approved by the District Judge and deposited with the clerk of the court. Thereupon, under the provisions of the National Bankruptcy Act, 11 U.S.C.A. §§ 101, 78 (h), the bank became an authorized depository of bankruptcy funds and the bond became subject to suit in the name of the United States for the use of any person injured by breach of its condition.

Flynn, the surety, whose liability under the bond is the subject of this discussion, was president of the bank. In March, 1926, he died, and thereupon Nelly Flynn Chain was appointed executrix of his estate. Herring, the other surety, was vice president of the bank, and upon Flynn's death became the president. On August 12, 1930, more than four years after the death of Flynn, the trustee of the bankrupt estate of W. H. Pentony opened an account with the bank and made deposits therein until June 22, 1931, when the bank having become insolvent closed its doors. The trustee then had a balance to his credit of $3,190.72, and to recover this sum with interest the present suit was brought against the bank, Herring, the co-surety, and the executrix of the deceased surety. There is no evidence that any other bankruptcy funds were deposited in the bank either before or after the death of the surety.

The executrix raised the point in the District Court that Flynn's estate had no liability on the bond because he had died before the bankruptcy funds were deposited. The case was submitted to the court on an agreed statement of facts which, in addition to the facts already set out, showed that the executrix did not know of the existence of the bond until after the bank had closed; that the trustee before making the deposit

was informed by the referee in bankruptcy that the bank was a duly qualified depository; that the trustee had no knowledge of the death of Flynn when he made the deposits, but would have learned of the death of Flynn if he had made any investigation in regard to the depository bond given by the bank; and that only 10 per cent. of the funds deposited by the trustee had been repaid by the receiver of the insolvent institution. Upon these facts, the court found for the trustee in bankruptcy in the sum of $3,-680.25, with interest, and judgment for this amount was entered against the surety's estate; and the executrix, having excepted to the ruling of the court, entered this appeal.

■ The liability of the estate of the surety for a breach of the condition of the bond occurring after his death depends in the first place upon whether the bond was in itself a binding contract from the date of execution or merely an offer which did not ripen into a contract until deposits were made; and then, if it is found that the bond was a complete contract in itself, it must also be determined whether it terminated or lapsed as to the deceased surety before the deposits were made. It has been suggested that there was no binding contract prior to death because the bond was merely an offer to insure the return to the depositors of funds deposited in the bank, and that until somebody accepted the offer by making a deposit, no binding contract was formed; and since no deposits were made during the life of the surety, the contract as to him never went into effect. The situation is likened to a continuing guaranty of a series of performances in which the guarantor, without present consideration, guarantees a series of future sales or credits, such as a guarantee of the payment of the purchase price of goods to be sold, or the repayment of money to be loaned, from time to time, in the future. It has been generally held that such a promise is in effect a series of continuing offers which do not ripen into contracts until each credit in the series is extended; that "the consideration is fragmentary, supplied from time to time and therefore divisible"; In re Crace, [1902] 1 Ch. 733, quoting Lloyd's v. Harper, [1880] 16 Ch.Div. 290; and while neither revocation nor death will affect the guarantor's liability for transactions previously entered into, either revocation or death will prevent further liability from accruing. Williston on Contracts, §§ 58, 1253.

On the other-hand, when the consideration for the promise is indivisible and entire, and is given all at once at the outset, as in the case of the official bond of a guardian or administrator, clerk of court, or county treasurer, the surety cannot revoke it, nor will his death relieve his estate from liability for subsequent defaults although the acts guaranteed may cover a long or indefinite period of time. Hecht v. Weaver (C.C.) 34 F. 111; Pond v. United States (C.C.A.) 111 F. 989; McClaskey v. Barr (C.C.) 79 F. 408; Fewlass v. Keeshan (C.C.A.) 88 F. 573; United States v. Keiver (C.C.) 56 F. 422; Williston on Contracts, § 1253, and cases cited in note 81.

In our opinion, the depository bond in the pending case is more nearly analogous to a guarantee of a series of sales or credits than to an official bond. It is true that upon the approval and filing of a depository bond in bankruptcy, the bank acquires the status of an authorized depository, but until deposits are made, it is not an actual depository and no liability for the repayment of funds can arise. Moreover, the period of responsibility is not only long continued, as sometimes is the case of an official bond, but conceivably it is without end and it is not reasonable to conclude that the surety enters into such a contract with the intention that he and his estate shall be forever bound as to future deposits without the possibility of revocation or withdrawal.

■ The effect of death upon a revocable offer is thus stated in the Restatement of Contracts, § 48: "A revocable offer is terminated by the offeror's death or such insanity as deprives him of legal capacity to enter into the proposed contract." See, also, section 35. This rule has been criticized on the ground that under the modern view of the formation of contracts, it is not the actual meeting of the minds of the contracting parties that is the determining factor, but rather the apparent state of mind of the parties embodied in an expression of mutual consent; so that the acceptance by an offeree of an offer, which is apparently still open, should result in an enforceable contract notwithstanding the prior death of the offeror unknown to the offeree. On the other hand, it has been forcibly suggested that ordinarily the condition is implied in an offer that the offeror will survive to supervise the performance if his offer is accepted, and therefore an acceptance after death is ineffective even though the acceptor be ignorant of the

offeror's death. See the discussion by Herman Oliphant in 18 Mich.Law Review, 201; James Lewis Parks, 19 Mich.Law Review, 152, 23 Mich.Law Review, 475, 29 Univ. of Mo. Bulletin (Law Series 40) 5; Merton L. Ferson in 10 Minn. Law Review, 373; Selected Readings on the Law of Contracts, pp. 251, 260, 266, 275; Williston on Contracts (Rev.Ed.) § 62. These conflicting views, however, were given consideration in the preparation of the Restatement, and the rule announced was adopted as representing the weight of authority and professional opinion. See Proceedings of the American Law Institute, vol. 3, § 35, pp. 196 to 202.

The same rule has been announced with reference to a revocable offer contemplating a series of contracts, such as a continuing guaranty, if no seal is attached to the writing. Restatement of Contracts, § 44. In the cases in which the subject has been considered little or no account has been taken of the effect of a seal. In the greater number of the American cases, death alone has been held sufficient to terminate the offer; notice of death not being requisite. See United States v. Robson (D.C.) 9 F.Supp. 446; Jordan v. Dobbins, 122 Mass. 168, 23 Am.Rep. 305; Hyland v. Habich, 150 Mass. 112, 22 N.E. 765, 6 L.R.A. 383, 15 Am.St.Rep. 174; Aitken v. Lang's Adm'r, 106 Ky. 652, 51 S. W. 154, 90 Am.St.Rep. 263; In re Kelley's Estate, 173 Mich. 492, 139 N.W. 250, Ann. Cas.1914D, 848; Michigan State Bank v. Leavenworth's Estate, 28 Vt. 209; L. Teplitz Thrown Silk Co. v. Rich, 179 A. 305, 13 N.J.Misc. 494; American Chain Co. v. Arrow Grip Mfg. Co., 134 Misc. 321, 235 N.Y.S. 228; Klatte v. Franklin State Bank, 211 Wis. 613, 248 N.W. 158, 249 N.W. 72; see, also, Valentine v. Donohoe-Kelly Banking Co., 133 Cal. 191, 65 P. 381; In re Lorch's Estate, 284 Pa. 500, 131 A. 381, 42 A.L.R. 922. In the following cases, notice of death has been stated to be necessary, although in some of them it was not necessary to decide the point: Gay v. Ward, 67 Conn. 147, 34 A. 1025, 32 L.R.A. 818; National Eagle Bank v. Hunt, 16 R.I. 148, 13 A. 115; Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602; Exchange Nat. Bank v. Hunt, 75 Wash. 513, 135 P. 224; Bradbury v. Morgan (1862) 8 Jur. (N.S.) 918; In re Silvester, [1895] 1 Ch. 573; Coulthart v. Clementson, [1879] L.R., 5 Q.B.Div. 42; Harriss v. Fawcett, [1873] L.R., 8 Ch. 866; Dodd v. Whelan (1897) 1 I.R. 575 (Ireland).

██ The depository bond in the pending case was under seal and although the effect of the seal was not discussed at the bar, we shall assume, as was concluded in a study of the legal status of the private seal in West Virginia in 40 W.Va. Quarterly, 330, that in regard to such an instrument, local legislation has not altered the general rule of the common law that an offer under seal is a completed contract in itself irrespective of consideration. The rule as to the termination of such a contact by revocation or death is not so broad or inflexible as that set out in sections 35 and 48 of the Restatement of Contracts with reference to revocable offers generally. Section 46 of the Restatement of Contracts is as follows:

"Sec. 46. Offers which are themselves contracts.

"An offer for which such consideration has been given or received as is necessary to make a promise binding, or which is in such form as to make a promise in the offer binding irrespective of consideration, cannot be terminated during the time fixed in the offer itself or, if no time is fixed, within a reasonable time, either by revocation or by the offeror's death or insanity."

██ And section 40 of the Restatement of Contracts with respect to what lapse of time terminates an offer, provides:

"(1) The power to create a contract by acceptance of an offer terminates at the time specified in the offer, or if no time is specified, at the end of a reasonable time.

"(2) What is a reasonable time is a question of fact, depending on the nature of the contract proposed, the usages of business and other circumstances of the case which the offeree at the time of his acceptance either knows or has reason to know."

In harmony with this statement of the law, it has been held that a statutory bond under seal, unlimited as to time, to secure the transmission to foreign countries of moneys paid to steamship agents, is revocable upon reasonable notice to the official with whom the bond was required to be filed. Vidi v. United Surety Co., 155 App.Div. 502, 140 N.Y.S. 612; and the liability of sureties on a sealed instrument, unlimited as to time, to secure the payment for goods sold and delivered or the faithful performance of duty by an insurance agent or collector, may be terminated by notice reasonable in point of time under all the circumstances. Jeudevine v. Rose, 36 Mich. 54; Emery v. Baltz, 94 N.Y. 408; Ricketson v. Lizotte, 90 Vt. 386, 98 A. 801; Bremer v. Rufener, 186 Wis. 195, 202 N.W. 206.

The depository bond in the present case was unlimited as to time. In our opinion, the question, whether it was still effective and binding upon the estate of the deceased surety in 1930 when the first deposit was made, depends upon whether more than a reasonable time had elapsed since the execution of the contract; and in determining what was a reasonable time, we must consider all the circumstances of the case, including all those which the depositor knew or had reason to know when the deposit was made. When this is done, we are compelled to conclude that more than a reasonable time had passed in view of the circumstances surrounding the giving of the bond, the making of the first deposit, and the intervening death of the surety. When he died, the bond had been in existence for two years, and, so far as we know, no trustee in bankruptcy had ever made a deposit in the bank under the protection of the surety's promise. Indeed, not until four years after the surety's death did the trustee of the Pentony estate make a deposit and attempt to bring himself within the terms of the bond. At that time, as required by 11 U.S.C.A. § 78 (h), the bond was on file in the office of the clerk of the court, and the trustee was charged with notice of its contents and was not relieved therefrom by the informal statement of the referee that the bank was an authorized depository of bankruptcy funds. The agreed statement shows that if at the time of the deposit the trustee had made an investigation in regard to the bond, he would have learned the true situation, and he would not have been able reasonably to conclude that the bond was still in effect. Such, we think, would necessarily have been the normal reaction of any reasonable man; and so it is clear that the bond had already terminated when the first deposit was made, and there was no factual basis for the verdict of the trial court.

It was said in Continental Casualty Co. v. United States (C.C.A.) 68 F.(2d) 577, 580, with regard to a bond to secure deposits of bankruptcy funds, that there is no serious dispute of the right of a surety to terminate its suretyship where the term of the obligation is unlimited and the thing secured to be done is the compliance with specified contractual undertakings of the principal; but that to effect such a termination, proper proceedings should be taken. In our view, a surety on a depository bond in bankruptcy who desires to be relieved of the obligation under the bond, should give notice of withdrawal by petition to the court, and should secure an order of court revoking its appointment. It does not follow, however, that the liability of an individual surety upon such a bond must continue after his death until such a petition has been filed and order of court has been obtained. It is the duty of courts of bankruptcy under 11 U.S.C.A. § 101, not only to designate bankruptcy institutions as depositories and to require depository bonds, but from time to time, as occasion may require, to increase the amount of any bond or change the depositories. Hence, it is incumbent upon the court to keep itself informed as to the condition of such bonds and the responsibility of the sureties thereon, and it is not too much to expect the court to ascertain whether individual sureties are living or dead, and to cancel the bond of a deceased surety within a reasonable time after his death.

The judgment of the District Court is reversed.

PARKER, Circuit Judge (dissenting).

In my view of this case, the bond sued on is in no sense a mere offer, revocable by the death of the offeror. It is a solemn contract, which was entered into pursuant to law in order that a bank might be designated by order of court as official depository of bankruptcy funds. 11 U.S.C.A. § 101. As a result of the giving of the bond, the bank was created an official depository and was eligible to receive deposits of bankruptcy funds as such. I cannot conceive that liability under the bond terminated, while this official status of the bank continued, merely because of the death of the bondsman. The bond is but a promise under seal and upon a sufficient consideration to pay to the United States the amount therein stipulated. It is well settled that a promise to pay money survives the death of the promisor; and I know of no principle upon which the promisor may be absolved merely because the promise is upon a condition and the breach of the condition occurs after his death. Death terminates the power of a deceased to act and revokes any authority or license he may have given; but his estate is liable upon a binding contract existing at the time of his death, even though the liability may depend upon future contingencies.

I can see no difference in principle between such a case and that presented by any other bond required for the creation of an official status such as that of collector, guardian, administrator, sheriff, or clerk of the

court. In the case of such bonds, the rule is perfectly well settled that the estate of a deceased surety is liable for breaches and defalcations occurring after his death. 21 R.C.L. 982; 24 C.J. 290. Thus, such liability has been enforced upon the bond of a Collector of Internal Revenue, Pond v. United States (C.C.A. 9th) 111 F. 989, 997; upon the bond of an administrator, Hecht v. Skaggs, 53 Ark. 291, 13 S.W. 930, 22 Am. St.Rep. 192; upon the bond of a deputy sheriff, Green v. Young, 8 Greenl. (Me.) 14, 22 Am.Dec. 218; upon the bond of a clerk of the court, Snyder v. State, 5 Wyo. 318, 40 P. 441, 63 Am.St.Rep. 60; upon the bond of a guardian, Moore v. Wallis, 18 Ala. 458; upon the bond of a cashier of a bank, Shackamaxon Bank v. Yard, 150 Pa. 351, 24 A. 635, 30 Am.St.Rep. 807, 810; and upon the bond of an agent for an insurance company, Royal Ins. Co. v. Davies, 40 Iowa, 469, 20 Am.Rep. 581. The reason for the rule was well stated more than a hundred years ago by Judge Weston, speaking for the Supreme Judicial Court of Maine, in Green v. Young, supra, where the deputy sheriff's bond, like the bond before us, did not run for a fixed period. Said he: "The intestate undertook that the principal in the bond should discharge the duties of the office, to which he was appointed. For what period? So long as he continued in office, under that appointment. The breach found then, is within the very letter of the condition. The counsel for the defendant sets up, as a limitation of the liability of the intestate, that it is confined to breaches accruing in his lifetime. This limitation is not to be found in the instrument; and if it is sustained, it must arise by construction of law from the nature of the undertaking. We have examined with care the cases cited for the defendant, but can find nothing to justify the limitation for which he contends. The plaintiff had a right to repose upon the solvency and sufficiency of the surety. If his security in regard to future breaches ceases upon the death of the surety, he might suffer, however vigilant. He might incur severe responsibilities, arising from subsequent breaches, before he could be advised of the death of the surety. If the defendant, representing the intestate, is not liable in this case, the death of a surety upon a sheriff's bond, and upon the bonds of the treasurer of the state, of a county or town, of cashiers of banks, and of many other officers who are required to give bonds, would exonerate his estate from subsequent breaches, and throw the whole responsibility upon surviving sureties."

It is suggested that the bond here is distinguishable from official bonds because it does not run for a fixed period. Neither, for that matter, did the bonds in a number of the cases cited; but I think that this is a distinction without a difference. The condition of the bond is that the bank shall well and faithfully discharge and perform all duties pertaining to it as depository of funds. For what period? So long as the bank shall continue as a depository or until liability shall be terminated upon substitution of another bond under order of court. Id certum est quod certum reddi potest. The idea that, because the period of liability is not limited in the bond, the bondsman may terminate liability at any time he sees fit, does not appeal to me as sound. He has made it possible for the bank to be appointed a depository by going on its bond. An order of court has solemnly approved the bond and designated the bank as depository. And I do not think that he can be relieved of the obligation thus solemnly assumed, except by an act of court of equal solemnity, i. e. by an order terminating the status of the bank or approving another bond. As said by the Circuit Court of Appeals of the Seventh Circuit in Continental Casualty Co. v. United States, 68 F.(2d) 577, 582, "Such suretyship is not to be lightly entered into, and when undertaken is not to be lightly terminated." In that case it was held that the surety could not terminate his liability under the bond merely by giving notice to the judge and to the bank.

But whatever be the right of the bondsmen to terminate liability by notice, which would lead to the requirement of another bond if the official status of the bank is to be continued, I do not see how such liability may be terminated merely by death without notice, which permits the continuance of the official status that the bond was given to safeguard. The liability under the bond was assumed that the official status of the bank might be created; and it seems unreasonable to me to give a construction to the bond which makes it possible for the liability thereunder to be terminated, without action by the court, while the official status of the bank, which was dependent upon that liability, is continued.