EDWARD T. HYLAND & others *vs.* EDWARD T. HABICH & another.

Bristol.    October 26, 1889. — November 12, 1889.

Present: DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Guaranty — Collateral Security — Mortgage — Revocation — Death of Guarantor.*

A guaranty of the payment by another of goods to be sold in the future, secured by a mortgage of land, is revoked by the death of the guarantor, and thereupon the land may be redeemed from the mortgage upon payment for the goods sold up to that time.

BILL IN EQUITY, filed in the Superior Court on August 20, 1888, to redeem land from a mortgage. The case was heard on the pleadings and an agreed statement of facts, by *Blodgett, J.*, who reserved it for the determination of this court, in substance as follows.

The first named defendant, a resident of Germany, is and has

been for many years engaged in the business of manufacturing and selling ales, and the other defendant was his attorney and representative. On April 27, 1880, Bridget Hyland, wife of Matthew Hyland, who was then indebted to Habich for ales purchased of him, executed and delivered to Habich a mortgage of the land in question, which was owned by her, to secure " the sum of all indebtedness the said Matthew Hyland may now be under to said Edward Habich, and also the price or value of all such wares, goods, or merchandise as may be purchased by or consigned to said Hyland, and all notes and obligations given or to be given therefor." Habich continued to sell ales to Hyland on the credit of such mortgage until November 25, 1887, all of those sold up to September 2, 1887, being duly paid for. Bridget Hyland died on October 17, 1887, leaving a will by which she devised her real estate to her husband for life, and the remainder to her children ; and the fact of her death was known to Habich on the same day. The amount of sales from September 2 to October 17, 1887, was $1,490, and from October 17 to November 25 of the same year $1,040; and Habich on July 28, 1888, duly demanded the payment of the aggregate thereof from the plaintiffs, who were such husband and children. Upon the non-payment of this sum, Habich proceeded to foreclose the mortgage, whereupon this bill in equity was filed.

If Habich was entitled to recover for all the sales, a decree was to be made for the redemption of the land upon the payment of $2,5£0 ; but if he was entitled to recover only for such sales as were made before October 17, 1887, a decree was to be made for such redemption upon the payment of $1,490; in either case, from the date of the demand, with costs.

*S. M. Thomas*, for the plaintiffs.

*A. M. Alger*, for the defendants.

KNOWLTON, J. The mortgage, which under the agreed statement of facts the plaintiffs seek to redeem, was given to secure the payment, first, of an existing indebtedness due from Matthew Hyland, and, secondly, of such indebtedness as might afterwards accrue from the sale or consignment of goods to said Hyland. The debt then existing was long ago paid, and we need to consider only that part of the mortgage which relates to the indebtedness thereafter to be contracted.

The language of the condition in the mortgage impliedly gave the mortgagee a right to sell goods to said Hyland for an indefinite time upon the faith of this security. It was like an ordinary continuing guaranty of payment for goods to be sold, except that, instead of a personal undertaking to pay as a guarantor, it was a transfer of the estate as security for the payment. The mortgagee had the same right to sell, trusting to the security, and there were the same limitations upon his right, as if the mortgagor had given merely a personal continuing guaranty. He had an implied authority from the owner of the mortgaged estate, which was subject to revocation at any time, and which would be revoked by the death of the owner. The principles laid down in *Jordan* v. *Dobbins*, 122 Mass. 168, are decisive of this case.

The defendants urge, that a conveyance of property as security implies that the authority to sell is to continue after the death of the owner, until the owners of the estate see fit to revoke the authority. But we see no good ground for this contention. If the security were by a mortgage of personal property, there would be no one after the death of the mortgagor who could revoke the authority until the appointment of an administrator. In the mean time, the property might be charged to its full value. And if the mortgage were of real estate, different heirs might disagree as to the action to be taken. We are of opinion that the right to sell upon the faith of the guaranty rests upon a continuing authority, and that, where a mortgage is given, instead of a personal promise, as security, the authority proceeds from the mortgagor, and is terminated by his death. Even in England, where it is held that such a guaranty is terminated, not by the death of the guarantor, but by notice of his death, the knowledge which the mortgagee in the present case had of the death of the mortgagor would be deemed constructive notice, sufficient to determine his right to sell on the faith of the security. *Harriss* v. *Fawcett*, L. R. 15 Eq. 311, and L. R. 8 Ch. 866. *Coulthart* v. *Clementson*, 5 Q. B. D. 42, 47. *Lloyd's* v. *Harper*, 16 Ch. D. 290, 314, 319.

Under the agreement of the parties, the plaintiffs are entitled to redeem upon the payment of $1,490, with interest from July 28, 1888, and costs.          *Decree accordingly.*