THE NATIONAL LIBERTY INSURANCE CO. OF AMERICA
v. MEYER ET AL.

*Suretyship—Fidelity bond against misconduct of employe, without time limit—Sureties released upon giving sufficient notice—Guaranty revocable at pleasure of guarantor after sufficient notice, when.*

1. Sureties on fidelity bond against misconduct of employe, without time limit, and not for particular transaction, are released by giving sufficient notice.
2. Promise of guaranty is revocable at pleasure of guarantor on sufficient notice, unless made to cover specific transaction or for continuing consideration, benefit of which guarantor cannot, or does not, renounce.

(Decided March 29, 1926.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Harmon, Colston, Goldsmith & Hoadly,* for plaintiff in error.
*Mr. J. T. Rhyno* and *Mr. D. T. Hackett,* for defendants in error.

CUSHING, J. The National Liberty Insurance Company of America is a corporation, and successor to the Germania Fire Insurance Company of New York.

About, or prior to, June 25, 1917, Henry B. Boelscher was in the employ of the Germania Fire Insurance Company, as bookkeeper and cashier of the company. On the date last above mentioned, a bond was executed to said insurance company by Boelscher, as principal, and Henry W. Meyer and

386     OHIO APPELLATE REPORTS.

Natl. L. Ins. Co. *v.* Meyer.     [21 Ohio

Mrs. Bridget Kelley, as sureties. The obligation of the bond was:

"Now, if the said Henry B. Boelscher shall well, honestly, and faithfully perform and discharge his duty as such bookkeeper and cashier, and shall account for all money and property which may come into his possession or under his control, and shall pay and deliver the same as required, or directed by the said Germania Fire Insurance Company of New York, and shall assume and pay all loss, damage, or expense which the said Germania Fire Insurance Company may sustain or incur through any act, neglect, misconduct, or default of said Henry B. Boelscher, then this obligation shall be void."

In August or September, 1917, the sureties separately notified the insurance company that they would no longer be bound on such bonds. This was first communicated to the company through its local manager, H. F. Finke, by telephone. On behalf of Mrs. Kelley, her attorney called on Mr. Finke personally, and gave notice that Mrs. Kelley would not longer be bound on said bond.

On October 20, 1917, William H. Schweikert, on behalf of H. W. Meyer, called on Mr. Finke, representing the Germania Fire Insurance Company, and asked whether Meyer had been released from the bond of Boelscher, and Finke informed him that Boelscher had procured another bond, and that Meyer was released, and, when asked to sign a statement, in writing, showing such release, Finke said it was not necessary, because Meyer was no longer on Boelscher's bond, and would not need to worry about it.

Finke employed Boelscher, and it was while he was in charge of the Cincinnati office that the bond was given.

The record further is that Boelscher remained with the company until June 30, 1918, was again employed by it on February 1, 1919, and remained in that employ until November 4, 1920; that the first investigation of Boelscher's books was made on December 5, 1920, and, as claimed in the petition, that his first theft occurred December 19, 1917, and such thefts were continued from time to time, while he was in the employ of the company, until he was a defaulter in the sum of $5,139.37. He paid $1,250, and the action was brought to recover the balance.

The trial court, in making its finding, stated that the prayer of the original petition was for $2,850. Some controversy arose over this, and it was finally stated by counsel for the insurance company that the amount was $2,880.57.

Two questions are presented on these facts: (1) Whether or not the defendants Meyer and Kelley gave notice to the insurance company of their intention not to be bound as sureties on the bond after September, 1917. (2) Whether in law a bond for an indefinite period, guarantying the good faith of an employe of a corporation, can be canceled by the sureties giving notice of their intention so to do.

At the conclusion of all the evidence, the plaintiff company and the defendants Kelley and Meyer moved the court for a judgment in their respective interests.

Boelscher did not appear, and judgment was entered against him for the full amount.

388          OHIO APPELLATE REPORTS.

Natl. L. Ins. Co. *v.* Meyer.          [21 Ohio

The trial court found from the evidence that the defendants Meyer and Kelley had duly notified the insurance company that they would not be longer bound on the bond. This was a question of fact, and we do not find that the conclusion of the court was manifestly against the weight of the evidence, and, therefore, on that ground, the prayer of the petition in error for a reversal of the case will be denied.

On the question of law as to whether or not sureties on a bond may give notice and be released from their obligation, it seems to us that that contention should be answered in the affirmative. There was no time limit in this bond for its termination. It was not given for the performance of a particular act. The rule is well stated thus: A promise of guaranty is revocable at the pleasure of the guarantor by sufficient notice, unless it be made to cover some specific transaction which has not yet terminated, or unless the bond was given upon a continuing consideration, the benefit of which the guarantor cannot, and does not, renounce. Under a simple guaranty to indemnify one against the misconduct of an employe, in this case that the employe will faithfully account and turn over to the company moneys coming into his possession, the guarantor may be released on notice, if the company can dismiss the servant without injury to it, on his failure to provide a new and adequate surety.

The rule is stated by some authorities in this form: A surety may revoke and end his liability, either where the guaranty contract has no definite time to run, or where it has such time, but the principal has so violated it, that the bondsmen may

lawfully terminate it on account of the breach. Cases to this effect are *La Rose* v. *Logansport Nat. Bank,* 102 Ind., 332, 1 N. E., 805; *Emery* v. *Baltz,* 94 N. Y., 408; *Singer Mfg. Co.* v. *Draughan,* 121 N. C., 88, 28 S. E., 136, 61 Am. St. Rep., 657; *White Sewing Mach. Co.* v. *Courtney,* 141 Cal., 674, 75 P., 296, and many other cases.

Counsel for plaintiff in error cite and rely on two cases: *Gordon* v. *Calvert,* 2 Simmons, 252, 57 Eng. Rep. Reprint, 784, and *National Life Ins. Co.* v. *Olhaber,* 17 W. L. B., 353, 9 Dec. Rep., 842.

The *Olhaber case* is not in point, and we will not discuss it.

The English rule, stated in *Gordon* v. *Calvert, supra,* is contrary to that stated by the courts in this country. Counsel have not called our attention to any case in the United States in which the English rule has been followed. A holding that a surety who once signs an indemnity bond, without limitation as to time, is thereby bound for all time, and even his estate after his decease, is a rule that does not appeal to this court, as founded on either reason or justice. We adopt the American rule, as stated by the courts in the United States, and in this view the judgment of the court of common pleas will be affirmed.

*Judgment affirmed.*

BUCHWALTER, P. J., and HAMILTON, J., concur.