## METROPOLITAN CASUALTY INS. CO. of N. Y. v. UNITED BRICK & TILE CO.

No. 22761.    Jan. 16, 1934.

Rehearing Denied Feb. 27, 1934.

Pierce, Follens & Rucker, for plaintiff in error.

Baker, Botts, Andrews & Wharton and Maris & Maris, for defendant in error.

OSBORN, J. This action was commenced in the district court of Kay county by the United Brick & Tile Company against the Southwestern Construction Company and the Metropolitan Casualty Insurance Company of New York for the purchase price of a quantity of brick furnished by plaintiff to the construction company. From a judgment in favor of plaintiff, the defendant Metropolitan Casualty Insurance Company of New York has appealed.

The United Brick & Tile Company will be referred to herein as plaintiff, the Southwestern Construction Company will be referred to as the defendant construction company, and the Metropolitan Casualty Insurance Company of New York will be referred to as defendant surety company.

This case was tried on a stipulation of facts which, in substance, shows that the defendant construction company, on September 13, 1928, entered into a contract with the city of Ponca City, Okla., to do certain paving in improvement district No. 75 of said city.

The defendant surety company executed a bond as provided by statute which guaranteed the payment of all indebtedness incurred for labor and material furnished in the construction of said street improvement district No. 75. It is shown that defendant construction company signed an application for said bond whereby it agreed that it would use the funds derived from district No. 75 in payment of labor and material bills on said district, but plaintiff had no knowledge of such agreement.

It is stipulated that between December 14, 1928, and December 28, 1928, plaintiff sold and delivered to defendant construction company certain paving brick which were used in the construction of improvements in district No. 75, the cost of said brick being $9.303. This action was filed within the statutory period of six months from the date of the completion of the paving contract.

Before plaintiff furnished or agreed to furnish said brick for district No. 75, the duly authorized representative of defendant construction company approached a representative of plaintiff and sought to make an arrangement for buying said brick on credit. Plaintiff refused to sell said brick on credit

unless defendant construction company should give plaintiff security for the payment of $9,717.19, which defendant construction company then owed to plaintiff for paving brick furnished for the construction of improvements in improvement district No. 74, in Ponca City, Okla., which had theretofore been constructed by defendant construction company under a separate contract. The labor and material bond for said district 74 had been executed by the United States Fidelity & Guaranty Company, a solvent surety company.

Thereupon, in order to induce plaintiff to furnish material for said district No. 75, the defendant construction company executed and delivered to plaintiff an assignment dated October 26, 1928, in which it assigned to plaintiff, out of the funds to be delivered in payment for the construction of the improvements in district No. 75, the sum of $9,717.19 with the express instructions that the same should be applied as credit upon plaintiff's account arising in connection with the paving of district No. 74, and that said sum was so applied by the plaintiff. It is agreed that plaintiff knew that said funds were delivered from the funds paid to defendant construction company for work performed in district No. 75, and that defendant surety company had no knowledge of said assignment or payment thereunder, and had not consented thereto.

It is further stipulated that when plaintiff sold to defendant construction company the materials used in the construction of improvements in district No. 74, it knew of the surety bond executed by the United States Fidelity & Guaranty Company, and relied upon recovering payment therefor either from the defendant construction company or from the United States Fidelity & Guaranty Company.

On February 4, 1929, plaintiff filed suit in the district court of Kay county, No. 14102, against the Southwestern Construction Company and the United States Fidelity & Guaranty Company seeking recovery for the value of the material furnished in the construction of the improvements in district No. 74.

The defendant construction company became insolvent prior to November, 1929, and the defendant surety company paid claims of parties other than the plaintiff herein for labor and material furnished on district No. 75, amounting to the sum of $5,574.55, all of said creditors assigning their rights to the defendant surety company.

It was further stipulated that if the court should hold that this judgment should be rendered for plaintiff and against the defendant surety company, said judgment should be for $9,303, with interest and costs. But if the court should find that judgment should be rendered for the defendant surety company against the plaintiff, then costs should be taxed against plaintiff and the sum of $9,303 should be applied in satisfaction of the claims of plaintiff for materials sold to defendant construction company and used in constructing improvements in district No. 75, and if defendant is entitled to recover on its cross-petition, that the balance of $414.19 should be paid by plaintiff to the defendant surety company.

The cause was duly submitted to the court, and judgment was rendered in favor of plaintiff and against defendants in the sum of $10,284.45, with interest from March 9, 1931, at 6 per cent.

The defendant, in seeking a reversal of the judgment of the trial court, divides its argument in five specifications of error, which may be summarized to the general effect that it claims an equitable right in the funds covered by the assignment dated October 26, 1928, by which defendant construction company assigned to plaintiff certain funds which were a portion of the contract price for paving district No. 75, and since the funds of district No. 75 were involved, said funds should be applied to the indebtedness arising from the paving of district No. 75 instead of district No. 74.

Plaintiff contends that the surety company has no such right in said funds covered by the assignment, and that the rule of law applicable hereto is that a creditor may apply a payment voluntarily made by the debtor without any specific directions as to application, where there are two or more debts, to whichever debt he pleases, and a surety cannot control the application of the payment, and in this case the debtor directed how the payment should be applied, of which the surety cannot complain.

The question presented is not free from difficulty, for the decisions from the various jurisdictions are not entirely in harmony. In order to determine the rule applicable in this jurisdiction, we take notice of section 10613, O. S. 1931, which provides as follows:

"The rule of common law requiring a strict construction of the obligations of a surety shall have no application to the obligations of a surety or guarantor or indemnitor for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance."

In the case of Southwestern Surety Insurance Co. v. Board of Com'rs of Coal County, 77 Okla. 137, 187 P. 467, it is held that a compensated corporate surety cannot invoke the rule of strictissimi juris. See, also, Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co., 33 Okla. 535, 126 P. 556; Fuqua v. Tulsa Masonic Building Ass'n, 129 Okla. 106, 263 P. 660; Chowning v. First State Bank, 102 Okla. 4, 225 P. 715.

The decisions of this court cited by the parties are not squarely in point, but are sufficiently analogous to the facts herein presented to consider in determining the issue involved.

Defendant relies upon the case of Sipes v. Ardmore Book & News Co., 138 Okla. 180, 280 P. 805. In that case several individual defendants had signed a bond which guaranteed to plaintiff that defendant book company would pay for certain merchandise consigned to it for sale. The book company was thereafter adjudged to be bankrupt. At the trial it developed that, after the execution of the bond, defendant book company had remitted to plaintiff sufficient funds to cover the goods consigned to it after the bond went into effect with the exception of an insignificant amount. From a judgment for this small amount against the sureties, plaintiff appealed, and the judgment of the trial court was affirmed. This court correctly held that the rule authorizing a creditor to make application of payments where such application is not made by the debtor does not apply as against a surety on a bond, where the specific money paid is the identical money which the surety has obligated himself under the terms of the bond to pay, and in such cases the surety is not bound by an application thereof to some other debt for which the surety is not liable. Such holding was correct for the reason that the obligations of the bond had been fully performed and plaintiff was seeking to establish an obligation in excess of the liability fixed by the specific terms of the bond.

The case of Southern Surety Co. v. Corbit, 142 Okla. 103, 285 P. 949, is more nearly in point with the facts in this case. In that case plaintiff sued the defendant surety company to recover on a road contractor's bond which guaranteed payment by the contractor of all indebtedness incurred for labor and material furnished in the construction of a highway. Plaintiff had sold the contractor a large quantity of oil and gasoline and had received from the contractor certain payments out of the funds received for construction of the highway. It developed that the contractor had a running account with plaintiff and the payments made by the contractor were applied by plaintiff to the other items on the account. Defendant contended that the payments made out of these funds should have been credited to that portion of the account for which it was liable as surety. The court held that where a debtor owing more than one debt to a creditor, or a debt composed of several items, fails to direct how a payment made by him is to be applied, the creditor may ordinarily make the application as he may see fit. It was also pointed out that the rule of Sipes v. Ardmore Book & News Co., supra, had no application to the facts as presented therein. The principal distinction between this case and the case at bar relates to the matter of direction by the debtor to the creditor as to the application of the payment made.

See, also, Waples-Platter Groc. Co. v. Hardin, 85 Okla. 49, 204 P. 433; Southwestern Surety Insurance Co. v. Neal, 81 Okla. 194, 197 P. 439.

Section 10613, O. S. 1931, and section 10983, O. S. 1931, were taken from Kansas. The case of Chicago Lumber Co. v. Douglas, 89 Kan. 308, 131 P. 563, presents a state of facts where a contractor purchased a quantity of lumber from plaintiff for use in a building constructed for the state of Kansas. The action was brought against the contractor and a surety company which had executed a bond guaranteeing the payment of bills for materials and labor used in the construction of the building. The surety company contended that it was entitled to credit for $2,000 which was an amount paid by the contractor to the lumber company out of the money obtained from the state in consideration for the work done on the building, but was applied by the lumber company to an old debt due from the contractor for material furnished under other contracts. In discussing said contention, the Kansas court said:

"The duty of the lumber company and the liability of the surety company are measured by the terms of the bond. There is nothing in it, as we have seen, which requires that money received by the contractor for the structure shall be applied on the claims of those furnishing labor and material, but there is an absolute and unqualified guarantee that all indebtedness for labor and material shall be paid. In a case in Michigan where a bond was given by a contractor to insure the payment of labor and material furnished on the contract, it was held that the sureties were not relieved by reason of the payment of an antecedent debt from the contract price of the improvement. It was said: 'This bond did not, in terms, provide that the contractor should apply his earnings to pay the laborers or materialmen, and the statute does not provide for such a

bond. It undertook that the contractor should perform his personal obligations in his own way. It contemplated that he would receive and disburse his money as should suit his convenience. This contention depends upon an alleged equity that the money earned shall be applied only upon the account for materials furnished for the particular job. It is not supported by the letter of the bond or statute, and we think it is not supported by authority.' People v. Powers, 108 Mich. 339, 343, 66 N. W. 215, 216.

"Appellant contends and cites some cases to support the theory that sureties, who are favorites of the law, are entitled to have money paid to their creditor applied to the payment of the debt for which they are sureties, rather than to earlier or unsecured debts. The cases are not applicable, even if it could be held that an equity might have arisen in favor of a gratuitous surety. The law does not have the same solicitude for corporations engaged in giving indemnity bonds for profit as it does for the individual surety who voluntarily undertakes to answer for the obligations of another. Although calling themselves sureties, such corporations are in fact insurers, and in determining their rights and liabilities the rules peculiar to suretyship do not apply. Hull v. Bonding Co., 86 Kan. 342, 120 P. 544; Medical Co. v. Hamm, 89 Kan. 138, 130 P. 650; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; case note in Phila. v. Fidelity & Deposit Co., Appellant, Ann. Cas. 1912B, 1085; case note in George A. Hormel & Co. v. American Bonding Co., 33 L. R. A. (N. S.) 513."

In the case of Wyandotte Coal & Lime Co. v. Wyandotte Paving Co. (Kan.) 154 P. 1012, it is said:

"Third persons such as guarantors, sureties, indorsers, and the like, secondarily liable on one of several debts, cannot control the application which either the debtor or the creditor makes of a payment, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons."

In the case of Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291, it is said:

"McCree, Moos & Company entered into a contract with the state to furnish material and pave a highway. It furnished the usual bond. The Globe Indemnity Company was the surety. The contractor then let the hauling of certain material to Day-DeVeau Motor Transportation Company, which, when it began its work, owed the plaintiff about $3,400 on account, which was wholly disconnected from the work mentioned in the bond. In doing the work mentioned in the bond, plaintiff furnished to the subcontractor for use on, and which was used on, the highway construction work, gasoline, oils, etc., of the value and agreed price of $3,466.36. The contractor paid the subcontractor $41,801.77 in full for the hauling, and it paid plaintiff $5,250 on account. Plaintiff knew that the money so received came from the original contractor on the work mentioned in the bond. Pursuant to an understanding between plaintiff and the subcontractor this money was applied, first, to extinguishment of the old unsecured debt, and thereafter upon said hauling, leaving a balance of about $1,600 unpaid and due, which plaintiff now seeks to recover from the original contractor and the surety. Held, that the moneys so unconditionally paid to the subcontractor became its money, and it could use it as its own, and the surety cannot direct application of payments, and that the plaintiff may recover the balance of its account from the original contractor and the surety."

The Minnesota court cited a number of decisions holding a contrary view and entered the following criticism of such holding:

"The authorities that hold contrary to our view do so upon the theory that such moneys are impressed with an equity in favor of the surety that entitles it to have the money applied in payment of liabilities incurred by the contractor under the contract. If such an equity exists as against a creditor, who has a current account arising out of the contract and also an account incident to some other and prior transaction, that prevents the creditor and his debtor agreeing that moneys which the creditor has received from payments under a particular contract shall be applied upon such prior indebtedness, it would seem that upon the same logic and reason, if this same creditor's claim consisted exclusively of the old account, he could not safely accept such moneys, with knowledge of their source, upon the old account. The money should still be subject to such equity in favor of the surety,' and, if the rule is followed to its logical conclusion, the surety in case of loss could recover payment from the general creditor. This leads to an instability in commercial business that does not have our approval. The creditor should not, in the collection of his money, be burdened with the responsibility of having to know the status of his debtor's accounts, nor the status of the obligation of the surety of the debtor. The surety, in modern business, should be, and usually is, quite able to care for itself. It selects those for whom it becomes surety. Most contractors and subcontractors must necessarily use some of their money that they receive in payment of obligations not incurred in the particular contract from which their money is received. When they receive their money unconditionally it is their own and they may do with it as they please. If a creditor

must stop, before he accepts payments from his debtor, and make the impertinent inquiry as to his standing with his surety, the unsatisfactory results are obvious.

"Such a position not only gives undue regard to the surety, but is in utter disregard of the right to make private contracts and the obligation thereof. Suppose his tailor is delivering a suit of clothes which he has made for the subcontractor, and the latter tenders payment in funds which the tailor knows came from the work covered by a surety bond, must the tailor refuse it, or take it clothed with an equity that, perchance, later permits the surety to take it away from him? A surety is not entitled to such judicial mercies. The tailor has business perils of his own. The business of sureties is inherently one of constant peril, and their imperative watchfulness for their general protection makes it less burdensome for them to guard against the emergency here under consideration, and our view tends more to the stability of ordinary business. We think our previous holdings on this subject are sound, and that we have adopted the better rule. We hold that such funds are not, under such circumstances, impressed with an equity in favor of the surety."

The above case is quoted with approval in Salt Lake City v. O'Connor (Utah) 249 Pac. 810, 49 A. L. R. 941, wherein it is said:

"The surety on the bond of a contractor for public work is not entitled to credit, as against persons furnishing material for the work, for payments made to them out of the contract price by the contractor upon pre-existing debts."

In discussing the decisions holding contrary to said view, the Utah court said:

"In Columbia Digger Co. v. Spark, 142 C. C. A. 304, 227 Fed. 780, a federal case arising in Washington, a decision of two judges out of three, based mainly on Crane Co. v. Pacific Heat & P. Co., 36 Wash. 95, 78 P. 460, holds the surety not bound by the application of payment to a pre-existing debt. The dissenting opinion by Judge Rudkin in this case is substantially approved in a later Washington case. B. F. Sturtevant Co. v. Fidelity & D. Co., 92 Wash. 52, 158 P. 740, L. R. A. 1917C, 630. The cases of Crane Bros. Mfg. Co. v. Keck, 35 Neb. 683, 53 N. W. 606, supra; Sioux City Foundry & Mfg. Co. v. Merten, 174 Iowa, 332, L. R. A. 1916D, 1247, 156 N. W. 367; and Alexander Lumber Co. v. Aetna Acci. & Liability Co., 296 Ill. 500, 129 N. E. 871, fairly support the appellant's contention, although in the last case some importance seems to be attached to the fact, there appearing, that the materialmen knew that at least a portion of the money in question paid to it was derived from the contract secured by the bond. This case also applied the rule that the obligation of a surety is to be construed strictly, which, so far as concerns paid sureties, is not the law in this state. M. H. Walker Realty Co. v. American Surety Co., 60 Utah, 435, 211 P. 998."

In the case of Grover v. Board of Education of Franklin T. P. (N. J.) 141 Atl. 81, it is said:

"A contractor for the erection of a schoolhouse received payment of an earned installment from the school board, and out of those moneys paid a sum to a materialman more than sufficient to pay in full the debt due him for materials for that school, but without any direction as to the application of the payment. The materialman, knowing the source of the payment, applied it in reduction of an antecedent indebtedness having no relation to the schoolhouse job, and later filed lien claim for the schoolhouse debt against the moneys in the hands of the school board. The contractor later abandoned the contract, which was completed by his surety.

"Held, that the lien claim is valid, even as against the surety; that the mere fact that the moneys used by the contractor in making the payment to the creditor were received by the contractor as part payment of the schoolhouse contract gave the surety no right at law or in equity to insist that such moneys be used solely or primarily in paying debts arising out of that schoolhouse job."

Other cases to the same general effect are Radichel v. Federal Surety Co. (Minn.) 212 N. W. 171; Meyer v. Cooper (Tenn.) 7 S. W. (2d) 38; National Surety Co. v. Southern Lumber & Supply Co. (Ark.) 24 S. W. (2d) 964; George H. Sampson v. Commonwealth (Mass.) 94 N. E. 473. See, also: 21 R. C. L. par. 115, pg. 108; 50 C. J. par. 177, pg. 104; and the following annotations: 60 A. L. R. 203, 49 A. L. R. 952, 21 A. L. R. 704.

In view of the above authorities and the public policy as announced by section 10613, O. S. 1931, and section 10983, O. S. 1931, we are constrained to hold that the contract price is subjected to no equity in favor of the surety as against materialmen furnishing material for the construction of said project unless such equity arises in a proper manner by contract between the surety and said contractor, of which contract the materialmen are required by other provisions of law to take notice. The purpose of requiring the execution of said bond was to relieve materialmen of anxiety concerning payment of the indebtedness for furnishing material used in the construction of public works. The bond is an unconditional guaranty of payment, and

the compensated surety places itself in the position of peril voluntarily and assumes the risk incident to the default of the contractor in paying his obligations. To hold otherwise would strike down the manifest purpose of said bond and would enable contractors engaged in public works to thwart the just claims of materialmen who are creditors.

Defendant surety company lays particular stress upon the fact that the specifications provided that the city could withhold payment of any of the funds and apply same in payment of claims for labor and material due on the job if bills on the contract were not paid. The contract provides:

"No moneys, payable under contract, or any part thereof, shall become due and payable, if the commission so elects, until the contractor shall satisfy the said commission that he has fully settled or paid for all materials and equipment used in or on the work and labor done in connection therewith, and the commission, if it so elects, may pay any or all such bills, wholly or in part, and deduct the amount or amounts so paid from any partial or final estimate."

The defendant surety company argues that it is a party to the above contract and by reason of the provisions thereof it acquired a lien on the funds paid on the contract to the extent that it had the right to demand that payments made on the contract would be used to pay labor and material bills on the contract. Such contention is without merit for the reason that the surety company is not a party to said contract, and for the further reason that said contract was made for the benefit of the city and not for the surety company, and we are not herein dealing with funds in hands of the city.

Defendant surety company also calls attention to the following portion of the stipulation of facts:

"That the Metropolitan Casualty Insurance Company as a condition precedent to the execution of said bond and before said bonds were executed had required the Southwestern Construction Company to sign an application wherein the Southwestern Construction Company agreed with the Metropolitan Casualty Company that it would use the funds derived from district No. 75 in payment of labor and material bills on said contract, but plaintiff had no knowledge of such agreement contained in said application, though it did assume an application was signed for the execution of said bonds."

It is argued that by virtue of the application for the bond and the agreement therein, the surety company acquired a lien on the funds derived from district No. 75 whereby it had the right to demand that said funds be used in payment of labor and material claims incurred in paving said district. It is argued that, since plaintiff assumed that an application was signed for the execution of said bond, it had constructive notice of the terms thereof, and having such notice, it was the duty of plaintiff to apply the funds received under the assignment to payment of bills for labor and material incurred in paving district No. 75. Such contention is without merit. Such information is wholly insufficient to place plaintiff upon notice, either actual or constructive, as to the terms of said application.

There being no error in the judgment of the trial court, the same is affirmed.

RILEY, C. J., CULLISON, V. C. J., and McNEILL and BUSBY, JJ., concur.