## CENTRAL SURETY & INS. CORPORATION v. RICHARDSON et al.

Nos. 27276, 27277, 27367.   May 31, 1938.

Roscoe E. Harper and Fenelon Boesche, for plaintiff in error.

Norton Standeven and Wallace C. Franklin, Jr., for defendants in error.

RILEY, J. This is an appeal from adverse judgments in three cases commenced by plaintiff in error in the district court of Tulsa county. Separate judgment was rendered in each of the cases in the trial court; but the three cases have been consolidated in this court. The parties will be herein referred to as in the trial court.

Cause No. 27276 is an appeal from an order approving the accounts of W. C. Richardson as trustee for the year 1934, under a testamentary trust created by the will of Anton Frank Maresh, deceased, and denying the petition of plaintiff for release from future liability on the bond of the trustee.

Cause No. 27277 is an appeal from an order approving the account for the year 1934 of Richardson as trustee of an insurance trust created by said Maresh, and a decree denying release from future liability on the bond of the trustee of said trust.

No. 27367 is an appeal from an order approving the account of said trustee of both trusts for the year 1935, and an order denying the renewed petition of plaintiff for release from future liability as surety on said bonds.

On August 19, 1929, Anton Frank Maresh made and executed his will where he devised certain property to the Exchange Trust Company of Tulsa, Okla., as trustee to be held and administered under the terms of the will, for the benefit of the widow and minor children of Maresh. Maresh died on December 31, 1931; and his entire estate, less the one-third part taken by the widow, was distributed by the Exchange Trust Company as trustee. This is what is referred to in the record as the testamentary trust.

On February 26, 1930, Maresh executed a

trust agreement with the Exchange Trust Company whereby said company should hold as trustee for the benefit of the widow and minor children the proceeds of certain insurance policies payable on the death of Anton Frank Maresh. This is referred to in the record as the trust. Upon the death of Maresh the proceeds of the insurance policies covered by the trust agreement were paid over to the Exchange Trust Company, as trustee, under said trust agreement.

The Exchange Trust Company acted as trustee of both trusts until June 29, 1933, at which time it became insolvent, and went into the hands of the Bank Commissioner of the State of Oklahoma.

The State Bank Commissioner administered the two trust estates until about February 6, 1934. The beneficiaries of the two trusts had previously brought action in the district court praying for the appointment of a successor trustee in each of said estates. As a result W. C. Richardson was appointed as successor trustee in both trusts.

In the testamentary trust the bond of the successor trustee was fixed at $10,000, and in the insurance trust the bond was fixed at $15,000.

Each of the decrees appointing the trustee, among other things, provided:

"That said W. C. Richardson, successor trustee, shall make and file with this court annual accounts of his acts as such trustee, and oftener if required by the court, and the court expressly reserves jurisdiction to hear and determine the accounts of the said trustee appointed by this court."

After his appointment Richardson made application to plaintiff for bond in each trust. The applications, among other matters, contained the following agreement:

"To procure the release of the said corporation within ten days after notice by the corporation so to do, the said corporation returning the unearned premium."

Among other questions required to be answered in the application, is the following:

"How long, approximately, will this bond be in force? Indefinite."

The bonds in question were executed without reference in any way to any matters contained in the application. The condition of the bonds, after reciting the appointment of Richardson as successor trustee, his acceptance, etc., is:

"Now, therefore, if the above bounded W. C. Richardson shall faithfully discharge his duties as Trustee according to the terms of said Last Will and testament and as provided by law, and shall truly account for all moneys, funds and properties received by him as such Trustee, then this obligation is to be void and of no effect, otherwise to remain in full force and effect."

The assets of both trusts in the hands of the State Bank Commissioner were delivered to Richardson as trustee of the respective trusts and he proceeded with the administration thereof, until about April 5, 1935, at about which time the trustee filed his first annual account. On that date plaintiff notified the trustee of its desire to be released as surety, and served written notice therein which, after formal recitations, stated:

"The application which you executed to the undersigned and under which the undersigned executed said bond for you as surety, provides that you agree to procure the release of the undersigned within ten (10) days after notice by the undersigned so to do, the undersigned returning the unearned premium.

"You are hereby notified that the undersigned hereby elects to be released as surety from said bond and hereby notifies you to procure its release from said bond within ten (10) days from this date, as you are obligated to do in said application. In accordance with the terms of said application we will return to you the unearned premium for that part of the current premium year subsequent to the effective date of our release from such bond.

"The undersigned expects you to comply with your agreement and to procure the release of the undersigned as surety from said bond within ten (10) days from this date and if you fail to do so the undersigned will take such steps as it may deem advisable in the premises to effect its release and to protect its rights in the premises."

Upon failure of the trustee to procure release of the surety on the bonds, plaintiff filed a separate petition in each case seeking release from liability on said bonds as to future transactions. In each case plaintiff relied upon three separate grounds for such release: (1) That plaintiff is entitled to such release under the provision and agreement in the application for the bonds quoted above; (2) that the obligation of the surety is in the nature of a continuing guaranty of the performance by the trustee of his duties as such, and because of the provisions of the trust agreements, the time during which the surety is bound is necessarily rendered indefinite and uncertain, so as to entitle the surety to a release at any time; and (3) that the annual report of the trustee shows certain violations of his trust,

in that the trust agreements provided for compensation of the trustee; (a) annual compensation, equal to one-half of 1 per cent. of the reasonable value of the trusts payable semiannually, and the annual report shows that Richardson had taken and paid himself compensation at said rate monthly, and had paid himself in some instances in advance, that is, at or about the first of each month he had drawn one-twelfth of the one-half of 1 per cent. for that month, and in some instances had drawn such compensation several days before the first of the month in which services were rendered; (b) that the compensation had been calculated on the "book value" of the estate rather than the reasonable value; and (c) that the order appointing Richardson as trustee provides for additional compensation for the trustee of one-half of the reasonable value of the estate during liquidation of properties and securities turned over to the trustee by the Bank Commissioner, and that Richardson had charged and paid himself such additional compensation although there had been little or no "liquidation" during the year.

Other irregularities were charged in the administration of the trust estates, which, together with those noted, it is claimed constituted such violation of the trust by the trustee as to entitle the surety to release as to future liability.

Substantially the same allegations were made in objection to the approval of the annual accounts for the year 1935, and application for release was renewed upon the hearing on the annual accounts for said year.

The trustee filed separate answer consisting of a general denial followed by certain admissions as to the formal allegations of the petition of the surety, and affirmative allegations to the effect that the trustee had faithfully accounted for all the assets coming into his hands:

"That the allegations of breaches of trust in said amended petition show upon their face that even if any of them were true, they are of such a technical nature as to amount to no consequence, and do not entitle surety to any relief."

He pleads, further, that the surety company had written the bonds with full knowledge of all the various provisions of the trust instruments, etc., and that the surety company had set out no justifiable cause for its release, and that there were none; that the surety company had by its acts and conduct in seeking a release so soon after the execution of the bond cast doubt as to the good character and reputation of the trust. such as to preclude him from obtaining other surety.

He also alleged on information and belief that premiums on such bonds had been increased so that a new bond, if obtainable, would be at much greater cost.

Guardian ad litem for the minor beneficiaries was appointed, and they, through guardian ad litem, joined in a separate answer with the widow, Lucy Maresh, in an answer consisting of a general denial, and other allegations substantially the same as in the answer of the trustee, with a separate allegation by the widow, Lucy Maresh, to the effect that she was satisfied with the management of the trust estate by said trustee, W. C. Richardson.

Hearing was had and evidence was taken going largely to the question of alleged violation of trust by the trustee.

It was established, and is now admitted, that the trustee did take compensation monthly instead of semiannually, and in some instances several days in advance of the first of the month.

Judgment was entered denying release of the surety from future liability on the bonds in question, and the annual accounts of the trustee were in all things approved, except that the trustee was directed thereafter to take compensation semiannually instead of monthly, and to make more detailed report as to assets coming into his hands belonging to the business operated by the trustee known as the Oklahoma Body Works, of which the widow owned a one-third interest and the testamentary trust owned a two-thirds interest.

Substantially the same judgment and order was entered in the proceedings relative to the combined hearing on the report of the trustee of the two trust estates for the year 1935.

The surety company appealed in all three cases, and the cases are consolidated.

The claim of the right of the surety company to be released under the provision in the application for bond to the effect that the trustee agreed to procure the release of the surety upon ten days' notice, is presented in the brief of the surety company under the second proposition stated in the brief, but will be considered first. The plaintiff in error cites no authority in support of this contention.

The application was not referred to in any way in either bond. It was not made a part

of the bond, and amounts only to a separate and private agreement between the principal and the surety. The agreement was not called to the attention of the court at the time or before the bonds were approved.

A somewhat similar question was presented in Metropolitan Casualty Ins. Co. v. United Brick & Tile Co., 167 Okla. 402, 29 P.2d 771. Therein an agreement between the principal and the surety as to the application of the proceeds of a paving contract for which the bond sued upon was given and not incorporated or mentioned in the bond was held ineffectual as against a third party who had no notice of such agreement.

In the absence of any reference in the bond itself to this independent agreement, we hold the surety not entitled to release thereunder.

Under its first proposition the plaintiff in error contends that the court erred in refusing to grant release on the two bonds. It is asserted that:

"The surety on the bond of a trustee of a trust of the character and for the long and indefinite term of the testamentary and insurance trusts in question has the absolute right to terminate at any time its suretyship and be released from all liability as surety for the future acts of the trustee."

This presents for consideration the law of principal and surety and of the law of guaranty. There is no statutory provision specifically providing for release of a surety on bonds of this nature as is the case in some states, or as in cases arising in probate or guardianship matters.

Plaintiff in error contends, however, that a person may be a surety on the principal's bond and at the same time occupy the position of a guarantor so far as concerns the creditor; that in such case it has all the rights of a guarantor, and is therefore entitled to release the same as a guarantor upon a continuing guaranty.

In this connection our attention is called to the rule stated in 28 C. J. 892:

"On the theory that the liability of a guarantor is to pay any damages which may accrue on account of the default of the principal debtor, it has been held that a surety upon a bond given to secure the faithful performance of his duties by a person occupying some official position or position of trust assumes the liability of a guarantor and not that of a surety, unless it is executed by the principal also. and its terms import a direct or primary obligation, in which case it is a contract of suretyship and not of guaranty."

The bonds in question by their terms do not impart a direct or primary obligation. They are conditioned for the faithful discharge of the duties of the trustee according to the terms of the last will and testament, and as provided by law in the testamentary trust bond, and for the faithful discharge of the trustee's duties according to the terms of the life insurance trust agreement and as provided by law, in the insurance trust bond. So in each case the liability incurred is contingent and indefinite.

We are also cited to the rule stated in 50 C. J. 94, as follows:

"A surety bound for an indefinite and contingent liability and not for a sum fixed and certain to become due may revoke and end his future liability in either of two cases: (1) Where the guaranteed contract has no definite time to run. (2) Where it has such definite time, but the principal has so violated it and is so in default that the creditor may safely and lawfully terminate it on account of the breach. Where the suretyship contract is for a prescribed period, the surety cannot terminate the relation before the end of that period without the principal's consent, unless the principal has been guilty of some default or dereliction of duty."

Plaintiff in error asserts its right in the proposition under consideration under the first of the two cases stated, viz., where the guaranty has no definite time to run.

Defendants in error contend that the rule stated is not applicable because there is a definite term for the bond to run, which is the duration of the trust agreement. We must, therefore, look to the provisions of the two trust agreements.

The testamentary trust provides that the net income from the trust estate shall be paid to the widow during her lifetime, or so long as she does not remarry. Upon the death or remarriage of the widow, the estate is to be divided into as many equal portions as there may be surviving children and deceased children with surviving issue. The corpus of the estate to be distributed equally to the children, each child who shall then have attained the age of 21 years one-fifth of his or her share of the corpus, and as each child attains the age of 21 years, one-fifth part; as each child attains the age of 26 years, one-fourth of the remaining portion of his or her share; at 31 years, one-third of the remaining part; at 36, one-half of the then remaining portion; at 40 years, all the rest of his or her share. The youngest child, Robert Edwin Maresh, was born in 1928, so if he lives to the time for final distribution of his share, the trust must

continue until 1968. But it is further provided:

"* * * That if upon the attainment of the age of twenty-one, twenty-six, thirty-one, thirty-six and forty years any child of mine shall not have manifested such habits of industry and thrift and demonstrated such business ability as in the judgment of the trustee would qualify such child prudently to use, manage and invest the principal of his or her share, then and in that event the trustee, in the exercise of its sound judgment, may withhold the payment of any part or all of the principal of the portion of such child until he or she shall by the trustee be deemed qualified prudently to use, manage and invest the same. The trustee's judgment in this regard shall be absolutely final and conclusive and binding upon all parties."

And a further provision:

"In the event of any serious illness, accident, other emergency, or in the event abnormal conditions arise that make the payments directed in this trust inadequate, then the trustee is authorized to use principal of this trust estate. However. payments under this provision may be made to my said wife only so long as she is not remarried. Any disbursements made under this provision before division of this trust estate, shall be charged against the general trust fund: and any disbursements made after division of this trust into portions shall be charged to the portion of such beneficiary for whom expenditure is made. The trustee's judgment as to the necessity or expediency of making such payments of principal shall be final and conclusive and binding upon all parties."

The insurance trust contains somewhat similar provisions for distribution except that final payment to each son is to be made at the age of 45 years and to each daughter at the age of 50 years. All payments to be made without restrictions. The daughter was born in 1926, so that trust must as to the daughter, if she lives, continue until 1976. unless the entire corpus of her part or portion of the trust estate be paid out under the power given of acceleration under contingent emergencies under the following provision:

"In the event of any serious illness, accident, other emergency, or in the event abnormal conditions arise that make the payments directed in this trust inadequate, then the trustee is authorized to use principal of this trust estate. Any disbursements made under this provision shall be charged to the portion of such beneficiary for whom expenditure is made. The trustee's judgment as to the necessity or expediency of making such payments of principal shall be final and conclusive and binding upon all parties."

As to the portion going to the two sons if they live, the trust continues as to the elder until 1967, and the younger 1973, unless the entire corpus of the son's portion of the trust estate be paid out sooner under the "emergency" clause.

It is, therefore, impossible to fix a definite and certain date at which either trust must of necessity be closed. This is particularly true as to the testamentary trust. Certain conditions might arise under which that trust could and would be continued for an indefinite time after the daughter attains the age of 50 years, or after either or both sons attain the age of 45 years. This would depend entirely upon whether the trustee should decide whether the children, or either of them, had manifested such habits of industry and demonstrated such business ability as in the judgment of the trustee would qualify such child or children prudently to use, manage, and invest the principal of his or her share. The judgment of the trustee and his decision in such matter is made absolutely final and conclusive and binding on all parties.

Likewise in either trust the judgment and decision of the trustee is made final and conclusive as to when in the case of serious illness, accident, other emergency, or in the event abnormal conditions arise, so as to make ordinary payments inadequate. The trustee is authorized to use the principal, and the extent of the use of the principal thereunder is unlimited so that should the trustee decide that abnormal conditions had arisen, he might pay out the entire principal and thereby end the trust at any time.

Defendants in error are therefore mistaken in their contention that the duration of the trust is for a definite time.

In Smattinger v. City of Topeka (Kan.) 102 P. 509, the court recognized the rule that ordinarily a surety may terminate his liability on a bond where it has no definite time to run. Citing Emery v. Baltz et al., 94 N. Y. 408; Reilly v. Dodge et al., 131 N. Y. 153, 29 N. E. 1011; Hyland v. Habich, 150 Mass. 112, 22 N. E. 765.

In National Liberty Ins. Co. v. Meyer (Ohio App.) 153 N. E. 162, it is held:

"Sureties on fidelity bond against misconduct of employee, without time limit, and not for particular transaction, are released by giving sufficient notice."

And:

"Promise of guaranty is revocable at pleasure of guarantor on sufficient notice, unless made to cover specific transaction or

for continuing consideration, benefit of which guarantor cannot, or does not renounce."

In the body of the opinion the rule is said to be well stated thus:

"A promise of guaranty is revocable at the pleasure of the guarantor by sufficient notice, unless it be made to cover some specific transaction which was not yet terminated, or unless the bond was given upon a continuing consideration, the benefit of which the guarantor cannot, and does not, renounce."

Again it is said:

"The rule is stated by some authorities in this form: a surety may revoke and end its liability, either where the guaranty contract has no definite time to run, or where it has such time, but the principal has so violated it, that the bondsmen may lawfully terminate it on account of the breach." LaRose v. Logansport Nat. Bk., 102 Ind. 332, 1 N. E. 805; Emery v. Baltz, 94 N. Y. 408; Singer Mfg. Co. v. Draughan, 121 N. C. 88, 28 S. E. 136; White Sewing Mach. Co. v. Courtney, 141 Cal. 674, 75 P. 296.

After noting the rule in England as contrary, the court says:

"The English rule, stated in Gordon v. Calvert, supra, is contrary to that stated by the courts in this country. Counsel has not called our attention to any case in the United States in which the English rule has been followed. A holding that a surety who once signs an indemnity bond, without limitation as to time, is thereby bound for all time, and even his estate after his decease is a rule that does not appeal to this court, as founded on either reason or justice. We adopt the American rule as stated by the courts in the United States."

Innumerable cases might be cited holding to the rule that a bond for the faithful performance of the duties of one's office is a contract of guaranty, but we deem it unnecessary.

Treating the bonds in question as such, we consider the rights of a guarantor under our statute.

Section 9600, O. S. 1931, defines a guaranty as:

"A guaranty is a promise to answer for the debt, default or miscarriage of another person."

Section 9615, O. S. 1931, defines a continuing guaranty as:

"A guaranty relating to a future liability of the principal, under successive transactions. which either continues his liability or from time to time renews it after it has been satisfied, is called a continuing guaranty."

Section 9616, O. S. 1931, provides how a continuing guaranty may be revoked as follows:

"A continuing guaranty may be revoked at any time by the guarantor, in respect to future transactions, unless there is a continuing consideration as to such transaction which he does not renounce."

The bonds in question when considered in connection with the provisions in the two trust instruments, come squarely within the definition of a continuing guaranty as defined in section 9615, supra.

But treating the bonds in question as contracts of surety, the obligation assumed by the plaintiff in error and its rights under the law, and particularly our statutes, are substantially the same. It is generally recognized that:

"In a broad sense a contract of guaranty corresponds with that of suretyship, the distinction between them being merely technical. * * *" 28 C. J. 890.

Sections 9630 and 9631, O. S. 1931, lessen the distinction with respect to the rights of the surety.

A surety is exonerated in like manner with a guarantor. Section 9630, supra. Section 9631, supra, provides:

"A surety has all the rights of a guarantor whether he becomes personally responsible or not."

In White Sewing Co. v. Courtney, 141 Cal. 674, 75 P. 296, the effect of statutes identical with ours on these matters was under consideration. It is there held:

"Under Civ. Code, sec. 2814, defining a continuing guaranty as one relating to a future liability of the principal under successive transactions; section 2844, providing that a surety has all the rights of a guarantor; and section 2815, providing that a continuing guaranty may be revoked at any time by the guarantor as to future transactions ___a bond, conditioned to be void if an agent pay all obligations existing or to arise to his principal, may be revoked as to future transactions, at the will of the surety executing it."

Therefore, treating the contracts in question as guaranties, or as contracts of surety for an indefinite and contingent liability and not for a sum fixed and certain to become due, running for an indefinite time, the plaintiff in error was and is, as a matter of law, entitled to release from future liability, after reasonable notice.

The cases of Lawyer Surety Co. v. Ayrault, 150 N. Y. S. 800; Maryland Cas. Co. v. Klaber's Estate et al. (Ore.) 164 P. 574,

are cited and relied upon by defendants in error, but those cases are not in point. The proceedings were under statutes providing for the release of sureties, etc. The statutes required a showing of cause before the surety could be entitled to release.

Concluding, as we have, that the plaintiff in error was entitled to a judgment of release as to liability for future transactions, we deem it unnecessary to discuss the question raised as to the right of the surety to be released because of alleged violation of trust by the trustee.

We also deem it unnecessary to consider the alleged error in approving the two annual accounts of the trust for the year 1935, presented in No. 27367. There is no claim at this time of liability of the surety for any breach of trust on the part of the trustee.

The judgments in the three cases, in so far as they refuse release from future liability, are reversed and remanded, with directions to enter judgment in accord with the views herein expressed.

BAYLESS, V. C. J., and WELCH, PHELPS, CORN, GIBSON, and HURST, JJ., concur. OSBORN, C. J., and DAVISON, J., absent.